Durebe, C. J.
 

 This is a bill in equity, preferred by Robert Earle, the complainant, as trustee of the prop
 
 *377
 
 erty of Anna E. Chace, wife of Harvey Chace, under Gen. Stat. R. I.
 
 [1]
 
 cap. 152, § 18, to procure a reconveyance of certain real estate, being the estate in the town of Lincoln occupied by said Harvey and Anna as their homestead, which formerly belonged to said Anna in fee simple, and which was conveyed to the defendants, James H. Chace and Jonathan Chace, by deed, bearing date of February 18, 1853. The bill alleges that Harvey and Anna were married September, 30, 1835 ; that they have no children living, said James and Jonathan being children of Harvey by a former wife ; that the estate in question was purchased in the name of Anna and paid for out of her separate property long previous to February 18, 1853 ; that Anna reposed the fullest trus^t and confidence in her husband, and was accustomed to execute such instruments as he asked her to execute without question ; that she executed the deed of February 18, 1853, on his representation that it was necessary on account of new business matters,'without full knowledge of its contents and effect, confiding in his representations; that the deed was not explained to her by the magistrate before whom it purports to have been acknowledged, and that, in point of fact, she never acknowledged the deed to the magistrate, her only acknowledgment being made to a young girl, to whom, in reply to the question whether the instrument was her free act and deed* she said, after some hesitation, if it was the wish of her husband,' she supposed it must be so.
 

 The bill alleges that said Anna received no consideration for the deed except a lease back of the estate, of the same date, to her and her husband for and du'ring their joint lives and the life of the survivor ; that she knew nothing of the execution of the lease previous to October, 1876, when she discovered it in a small trunk among her private papers ; that it was not then recorded, but was subsequently taken away, without her knowlege
 
 *378
 
 or consent, and recorded; and that, after discovering the life-lease, she also discovered that the deed, which previous to October 26,1876, had not been recorded, was recorded on that day.
 

 The bill alleges that said Anna was not aware until some time in the year 1876 that she had parted with the title to her said homestead estate; and it charges that “ said Harvey Chace, James H. Chace, and Jonathan Chace, prior to and upon said eighteenth day of February,
 
 A. D.
 
 1853, agreed and conspired together to obtain from the said Anna F. Chace, without consideration and without the knowledge on her part of the effect thereof, the said conveyance of her homestead estate in fraud of the rights of the said Anna E. Chace.” It also alleges that said Anna reposed great trust and confidence in all the defendants, which they abused by getting her to sign the deed without consideration and without understanding its effect.
 

 The answer of James and Jonathan Chace denies all the allegations of fraud and abuse of confidence contained in the bill, and avers that the deed was executed by said Anna understandingly and in due form, in pursuance of a design deliberately matured by her and her husband, without any solicitation from them, and without any knowledge on their part that it was in contemplation until immediately before the deed was executed. The answer of Harvey Chace was filed by his guardian
 
 ad litem,
 
 he having become
 
 non compos mentis,
 
 and contains similar denials and aver-ments.
 

 The complainant’s claim to relief rests on three grounds, to wit:
 
 first,
 
 that the deed was obtained by actual fraud and deception practised on Anna E. Chase by the defendants ;
 
 second,
 
 that it was obtained by taking advantage of her trust and confidence in them; and
 
 third,
 
 that it was never duly acknowledged by her.
 

 1. The complainant is not relievable on the first ground without proving affirmatively the fraud and deception alleged. The evidence which he has adduced does not satisfy us. It comes mainly from Anna E. Chace. It is negative and inferential rather than positive and direct. Anna E. Chace testifies that she cannot remember having ever intended to make such a conveyance as hers of February 18, 1853, at least not with any intent to have it remain a permanent thing; and therefore the complainant
 
 *379
 
 asks the court to infer that she was. deceived into making it by the defendants. The defendants, James and Jonathan Cbace, testify tbat they did not know the conveyance was in contemplation until immediately before it was executed ; that they then understood that the making of it was already determined upon; that the determination was communicated to them by their father, Anna E. being present, and apparently assenting ; and that they simply received the conveyance and executed the life-lease in return, in compliance with what they supposed to be the concurrent desire of both Anna E. and Harvey Chace. In the face of testimony so distinct it is impossible for us to find that James and Jonathan Chace ever conspired with Harvey Chace to defraud and deceive Anna E. Chace as alleged, unless we are ready to find that they have committed perjury. Such a finding is unwarranted. It follows that if Anna E. Chace-was deceived, she was deceived by her husband. Mrs. Chace does not accuse her husband of having intentionally deceived her; on the contrary, she confesses that he has always seemed to be true and affectionate ; but she asserts that in point of fact she must have been deceived. In 1853 she was fifty-six years old and had no living child ; but she had an adopted daughter. Under the then law she, being a married woman, had no power to make a will devising her real estate; consequently, if she had then died, all her real estate would have descended, subject to the curtesy of her husband, to her adopted daughter. The defendants, James and Jonathan Chace, testify that Mrs. Chace, at that time, had for them all the affection of a mother. She admits it. It was felt, they say, that they had the superior claim to succeed to the homestead estate. In their view, therefore, the purpose of the conveyance was testamentary. Their view finds confirmation in the fact that shortly after the conveyance Mrs. Chace made, as she had the legal right to make, her will, bequeathing her personal estate to James and Jonathan Chace and her adopted daughter. It is reasonable to believe that the will was designed to supplement the conveyance. Another fact corroborates this hypothesis. In 1853 Jonathan Chace was living in Philadelphia. He was invited to come home by his father with “ reference to arrangements respecting property in future, after some of us shall have passed away.” The letter states: “ I have said nothing to any one but Anna about this
 
 *380
 
 invitation or the business we propose, she and I, to consider.” In compliance with the invitation Jonathan came home, and the interview, previously mentioned, between Harvey, Anna, James, and Jonathan, occurred, followed by the conveyance. It seems incredible that Mrs. Chace should not have had her eyes open to the character of a transaction which was preceded by so much preparation, or that any actual fraud could have been perpetrated upon her, where there was so much to attract attention, without leaving in her memory some more significant traces of the manner of its perpetration.
 

 The complainant contends that it is improbable tbat Mrs. Chace would knowingly have made the deed of February 18, 1853, because the estate which it conveys was bought for her by her husband as an equivalent for personal property which she inherited after marriage, and which came into his hands. The property referred to was inherited previous to 1844, and under the law which was applicable to it vested in the husband when reduced to possession. The estate was therefore in reality given by Harvey to Anna, though it may have been given in view of what he had received by virtue of his marital right. Under these circumstances, we think it not improbable that she may have been de - sirous of having the estate go after her decease to the children of Harvey, whom she loved, rather than to her own kindred or her adopted daughter. And this is the less improbable because the estate was not ancestral, and was associated in sentiment only with the Cliace family. And again, it is less improbable, carrying our minds back to that time, than it would be at present; for Harvey Chace and his sons appear to have been at that time in quite moderate pecuniary circumstances. And finally the idea that the conveyance and life-lease were intended in part as a sort of family settlement is further corroborated by the fact that, at about the time they were executed, Harvey Chace transferred to his wife bank and railroad stocks worth about five thousand dollars. It is difficult to reconcile this transfer with a corrupt purpose on his part to deceive and defraud her.
 

 In our opinion, therefore, the allegation of actual fraud is not sustained. According to the rule laid down in
 
 Mount Vernon Bank
 
 v.
 
 Stone,
 

 [1]
 

 2 R. I. 129, the complainant, having alleged
 
 *381
 
 actual fraud and failed to prove it, is not entitled to relief in tbis suit on any other ground. The case, however, has been presented on the other grounds, and we will therefore consider them.
 

 2. The second ground is, that the defendants got Mrs. Chace to make the conveyance of February 18, 1858, by taking advantage of her trust and confidence in them. The complainant seeks to bring the case within the rule enounced in
 
 Huguenin
 
 v.
 
 Baseley,
 
 14 Ves. Jun. 273 ; 2 White & Tudor Lead. Cas. *462. And
 
 see Hoppin
 
 v. Tobey, 9 R. I. 42. The rule is, that where property is conveyed to a person holding a confidential relation to the grantor, like that of guardian to ward or trustee to
 
 cestui que
 
 trust, the
 
 onus
 
 is on the grantee to show affirmatively that the grantor acts with full knowledge and independently of the pressure of the relation. The rule is most frequently invoked where the conveyance is voluntary or without adequate consideration; but it extends to all transfers of property. The rule applies especially to persons in fiduciary situations, but it is not confined to them. It is applicable whenever the relation is such that the grantor 'is dependent on the grantee for advice and direction, or is, as it-were, in tutelage or subjection to him as the guiding or controlling mind. In the language of Sir Samuel Romilly, in his celebrated argument in
 
 Huguenin
 
 v. Baseley, it extends “ to all the variety of relations in which dominion may be exercised by one person over another.” The rule, however, is applied with considerable latitude of discrimination. When the relation is not strictly fiduciary, the courts, while they carefully scrutinize the transaction to see that everything is understood, and that no unfair advantage is taken, regard the recipient of the benefit with less jealousy and suspicion; whereas it is almost, if not quite, impossible for voluntary donations made to persons holding fiduciary relations of great confidence and intimacy with the donors, to be upheld unless they are of comparatively inconsiderable value.
 
 Hunter
 
 v.
 
 Atkins,
 
 3 Myl.
 
 &
 
 K. 113;
 
 Huguenin
 
 v.
 
 Baseley,
 
 2 White & Tudor Lead. Cas. *462, and notes.
 

 In the case at bar there was a double relation. The relation between the principal grantor and the grantees was that of a
 
 *382
 
 step-mother to her step-sons. The relation was not one which necessarily invested the grantees with any dominion over the grantor. In point of fact the evidence does not show that they had any dominion over her ; nor does it show that she was in the habit of resorting to them for guidance. The contention is, that there was a trust or confidence reposed; but the evidence does not show the existence of any other trust or confidence than this: that the grantor had a motherly faith in the character of the grantees as dutiful step-children, and in their capacity as intelligent and capable business men. It does not appear that she had ever confided any of her affairs to their management, or that she had ever relied on them to enlighten her judgment in any matter of business. There was nothing to charge them with responsibility. In such circumstances, the utmost which they can be required to show, as donees, is that when she conveyed the estate she understood what she was doing;
 
 Cooke
 
 v. Lamotte, 15 Beav. 234;
 
 Hoghton
 
 v. Hoghton, 15 Beav. 278;
 
 Toker
 
 v. Toker, 31 Beav. 629; if indeed the burden is not rather on her to show that she misunderstood the effect of her conveyance when she executed it.
 
 Hunter
 
 v. Atkins, 3 Myl. & K. 113;
 
 Harrison
 
 v. Guest, 6 De G., M. & G. 424 ;
 
 Beanland v.
 
 Bradley, 2 Sm. & G. 339 ;
 
 Whalley
 
 v. Whalley, 1 Mer. 436 ; also in 3 Bligh, 1.
 

 We should have no hesitation in finding that she understood what she was doing, but for her denial. Her denial, however, is not free from ambiguity. It leaves a doubt whether she means to convey the impression that she did not understand the effect of the deed, or only that she signed it supposing it was intended for a temporary purpose. Let us give a moment’s attention to the evidence. She was fifty-six years old when she signed the deed, with her faculties unimpaired. The testimony shows that she was a woman of more than ordinary intelligence, with a practical turn of mind, evinced by her interest in the occupations of her husband and step-sons. She had previouly given mortgages on her estate for the benefit of her husband. If she did not know the purpose of the deed, she would have been likely to have asked; and yet, when she says she thought it was designed for a temporary purpose, she does not tell us for what purpose in particular she thought it was designed. Neither does she appear to have exhibited any curiosity to learn what became of it after
 
 *383
 
 ward, as she naturally would have done if she had supposed it was made for a temporary purpose. James and Jonathan Chace both testify that she was present when the project of the conveyance was first presented to them by their father. Jonathan Chace testifies that the matter was laid before them as a thing which his father and his step-mother had already considered and decided. The testimony does not show that she said anything; but we see no reason to doubt that she understood what was said for her by her husband. James Chace and his wife testify that they visited her in 1872, when her house was undergoing an alteration, and to a remark of one of them on it, she replied, “ Yes, building an addition to other people’s house.” She neither contradicts nor explains the remark. The inference which the defendants draw from it is, that she thereby recognized their interest in the estate. In the absence1 of any explanation, we think the inference is reasonable. Mrs. James Chace testifies that still earlier, Mrs. Chace told her the house belonged to the boys. James and Jonathan also testify that, in 1876-7 she asked for a large sum of money for her brother, which was refused, and that she then asked to have the estate reconveyed, but did not pretend that she had not acted understandingly when she conveyed it to them. In View of this testimony, we find it easier to believe that her recollection has faded and become confused, than to conclude that she did not understand what she was doing, when, twenty-six years ago, in the full possession of her powers, she executed the conveyance. The legitimate conclusion is, that she did then understand what she was doing. ,
 

 We have said that there is a double relation to be considered. There is not only the relation of the principal grantor to the grantees, but also the relation between her and her co-grantor, who is her husband and the father of the grantees. Undoubtedly this is a complication which challenges the closest scrutiny. But it is to be borne in mind that the husband derives no personal advantage from the transaction. The estate which he has under the life-lease is no greater than that which he previously enjoyed. He could have had no inducement' to engage' in the transaction but the interest of his children. Now it has been held that a donation after marriage from a wife to her husband, though it will be jealously scrutinized, will not be set-aside without proof
 
 *384
 
 that it was unfairly obtained, and that the
 
 onus 'probandi
 
 lies on the party impeaching the donation.
 
 Nedby
 
 v.
 
 Nedby, 5
 
 De G. & Sm. 377;
 
 Hardy
 
 v.
 
 Van Harlingen,
 
 7 Ohio St. 208. We see no reason why a more stringent rule should be applied in the case of a donation to the children of the husband simply on account of his interest in them as their father, or of his joinder in the deed of gift, than in the case of a donation to the husband himself. And in the case at bar there are special considerations which cannot be overlooked. The conveyance was made twenty-six years ago. Since it was made, the estate has been greatly improved at the expense of the husband. Since it was made, the husband has given the wife large sums of money for the use of her relatives. He has become imbecile and can no longer explain his participation in the conveyance. Even if she has not forfeited her claim to relief by her laches, the circumstances which we have mentioned must inevitably tell against her. Our conclusion is that the complainant is not entitled to relief for any abuse of the trust and confidence reposed by Mrs. Chace either in her husband or in her step-sons.
 

 3. The third ground for relief is, that the conveyance was never legally acknowledged. The allegation is not that the certificate is not in due form, but that in fact the acknowledgment was never taken as certified. We doubt whether the allegation, if proved, would afford any ground for equitable relief. But we are not satisfied with the proof. The magistrate who certified the acknowledgment is dead. He was a lawyer of good character. His certificate, if not absolutely unimpeachable, ought to stand until discredited by the most convincing proof.
 
 Kerr
 
 v.
 
 Russell,
 
 69 Ill. 666. The proof is not of that kind. It is given a quarter of a century after the fact, and by the grantor alone. She testifies that the conveyance was not explained to her by the magistrate, and that her only acknowledgment was made to a young girl, as above stated. But it appears that the only girl who is likely to have been present is a daughter of the magistrate, and she testifies that nothing of the kind ever occurred to her knowledge. We consider it far more probable that Mrs. Chace acknowledged the deed, and has forgotten the circumstances of the acknowledgment, which the testimony shows was not her only acknowledgment, than that the magistrate perpe
 
 *385
 
 trated the official malfeasance of wbicb he is accused. We therefore decide that the complainant is not entitled to relief on the third ground.
 
 Bill dismissed.
 

 Kdward H. Hazard §• Charles H. Parlchurst,
 
 for complainant.
 

 Benjamin P. Thurston $ James M.
 
 Ripley, for respondents.
 

 [1]
 

 Gen. Stat. E. I. cap. 152, § 18, is:
 
 “
 
 The Supreme Court may, upon petition in equity by any married woman, filed by her through her next friend, appoint a trustee or trustees pf her property, who shall be empowered, in his or their own name or names, as trustee or trustees, to sue for, recover, and hold such property, and may, under the direction of such court, change the investment thereof, and hold such property, or its proceeds, to the uses by law provided; said trust to continue during the coverture of such married woman, unless by order of said court sooner determined.”
 

 [1]
 

 In
 
 Masterton
 
 v.
 
 Finnigan,
 
 2 R.I. 316, 319, the court declined to rigidly
 
 *381
 
 enforce the rule of
 
 Mount Vernon Bank
 
 v.
 
 Stone,
 
 and in
 
 Tillinghast, Receiver,
 
 v.
 
 Champlin,
 
 4 R. I. 173, 198
 
 sq.,
 
 affirmed it as to actual or moral fraud distinguished from constructive, discussing the previous cases and reconciling them.