THOMAS McDONOUGH *et al. vs.* ANDREW F. McDONOUGH *et al.*

NOVEMBER 20, 1958.

PRESENT: Condon, C.J., Roberts, Andrews, Paolino and Powers, JJ.

POWERS, J. This bill in equity was brought to set aside a certain conveyance of real estate made by Andrew McDonough, now deceased, to himself and his son Andrew F. McDonough as joint tenants and not as tenants in common. After a hearing in the superior court on bill, answer and proof, the trial justice entered a decree denying and dismis-

sing the bill. From such decree the complainants have prosecuted an appeal to this court.

The bill also prayed for partition of the real estate in controversy in the event that complainants prevailed in their prayer to declare the conveyance null and void, but by reason of our conclusion no discussion of that phase of the bill is required.

The complainants' appeal contains nineteen reasons of appeal, the last seven of which relate to certain evidentiary rulings, but since these were neither briefed nor argued they are deemed to be waived. The reasons of appeal on which complainants rely are that the decree and the decision are against the law and the evidence and the weight thereof.

The complainants Thomas and William McDonough and respondents Andrew F. and Stephen McDonough, Helen Eldridge and Lillian Beatrice are the sons and daughters and all of the children of the grantor Andrew McDonough. The respondents Andrew F. McDonough and his wife Mary denied practically all of the material allegations in complainants' bill and the other respondents who admitted all of the allegations joined with complainants. During a recess of the hearing respondent Stephen McDonough died and the administrator of his estate was substituted by agreement and joined with complainants.

The pertinent evidence disclosed that on March 16, 1946 Ellen McDonough died seized and possessed of a one and one-half story dwelling house, located at 85 Evergreen street in the city of Providence, as a joint tenant with her husband Andrew McDonough. She was survived by her husband, four sons and two daughters. Shortly after her death the husband, Andrew McDonough, had a conversation with his son Andrew F. McDonough with the result that the latter gave up his home and with his wife Mary moved into the home of his father.

On April 5, 1946 said son contacted an attorney who had

represented the family in the past and advised him that his father wished to convey the property to himself and his son Andrew F. as joint tenants. The following day Mary McDonough, wife of Andrew F., visited the attorney at his office and restated that it was the desire of her father-in-law to convey the property to himself and his son Andrew F. as joint tenants. The attorney agreed to prepare the deed and to take it to the grantor's home on the following Monday after office hours.

The attorney, testifying by deposition, related that he prepared the instrument and called upon the grantor as agreed. His visit occurred shortly after office hours on April 8 and he talked with the grantor for about forty-five minutes, at the end of which conversation Andrew McDonough executed the joint deed as prepared by the attorney. The latter, after taking the grantor's acknowledgment, left with the deed which he mailed for recording on April 10.

The respondent Andrew F. McDonough testified that he and his wife gave up their home and moved in with his father at the latter's request so that the son might care for him and keep the property in repair, pay the taxes, insurance and water bills and all other expenses incident to the upkeep of the property and the care of his father. It was the contention of said respondent, and he so testified, that he did this following an agreement with his father that in consideration of his assuming these responsibilities the father would convey the property to himself and his son Andrew F. as joint tenants.

It is undisputed that the father suffered a stroke on January 5, 1945, but the testimony is conflicting as to whether or not his health was so impaired at that time that he was unable to return to work and that he became greatly enfeebled. The complainants Thomas and William and respondent Stephen, as well as a son-in-law, testified

that he was unable to work thereafter and that his physical and mental health were greatly impaired.

Doctor John T. Monahan, who treated the father at the time of the shock and thereafter, testified that his patient returned to work about ten weeks after the stroke and continued to work for the rest of that year. The doctor further testified that he continued to treat the patient and gave as his opinion that in May 1946, a month after the execution of the deed, the father's mental condition was "perfect" and his general physical condition enfeebled but not seriously so. This was also the testimony of respondent Andrew F. McDonough and his wife Mary.

The complainants Thomas and William McDonough, their sister Helen Eldridge, and her husband Charles testified that when they learned of the conveyance from their father Andrew to himself and his son Andrew F. they spoke to the latter and were told by him that he knew nothing of any conveyance and that all he had was a piece of paper authorizing him to pay the bills and care for the property. This testimony was categorically denied by respondent Andrew F. and his wife.

It is uncontradicted that the name of Andrew F. McDonough was added to a bankbook standing in the name of his father so that the funds on deposit would be available for withdrawal by the son to meet expenses in connection with the property. The respondent Andrew F. and his wife testified that in addition they spent more than $6,000 of their own funds for repairs, maintenance and general upkeep.

The father died on September 29, 1949 and six months thereafter, on March 1, 1950, complainants brought their bill of complaint.

The trial justice found from all the evidence that respondents Andrew F. and his wife Mary paid more attention to the parents of Andrew F., and after the death of his mother, to his father Andrew, than any of the other

children; that the father intended to convey the property to himself and his son Andrew F. as joint tenants in consideration of the latter's moving in with him and assuming responsibility for his care and the upkeep of the property; that the grantor Andrew was of normal mental and physical health for his age; and that there was a valid conveyance of a joint tenancy from the father to himself and his son *in praesenti.*

We have carefully examined the transcript and we cannot say that the trial justice was clearly wrong. It is obvious from a reading of the rescript that the trial justice was greatly impressed by the testimony of the doctor and the attorney, and considering their lack of any personal interest this is not unreasonable. We have held repeatedly that the findings of a trial justice are entitled to great weight and should not be disturbed unless they are clearly wrong or fail to do justice between the parties. This doctrine is so well established in this jurisdiction that no citation of authority is necessary.

The complainants contend, however, that respondents Andrew F. and his wife Mary by their answers admitted complainants' allegation that the grantor had implicit trust and confidence in the grantee Andrew F. and therefore the burden of proof shifted from complainants to respondent Andrew F., citing as authority *Earle* v. *Chace,* 12 R. I. 374, and cases therein cited. The rule contended for by complainants and quoted with approval in *Earle* v. *Chace,* at page 379, is that "where property is conveyed to a person holding a confidential relation to the grantor, like that of guardian to ward or trustee to *cestui que trust,* the *onus* is on the grantee to show affirmatively that the grantor acts with full knowledge and independently of the pressure of the relation."

We do not believe that said respondents' answer admitted the type of implicit trust relationship to which the rule is applicable. It is clear from a reading of complain-

ants' allegations in the bill of complaint and respondents' answer that the trust and confidence contemplated by respondent Andrew F. was that normally found between parents and children. It is true, of course, that where there is a conveyance such as is found in the instant case the court will scrutinize the transaction most carefully, but this is something less than the proposition for which *Earle* v. *Chace, supra,* stands. We do not believe that the burden of proof shifted from complainants to respondent Andrew F. McDonough, but in any event we are convinced that the grantor father acted upon independent advice furnished by the attorney.

The complainants further contend that the conveyance was a gift testamentary in nature and not a conveyance *in praesenti.* It must be remembered that the respondent son Andrew F. was a layman and did not have as full an understanding of the legal implications associated with a joint tenancy as would be expected of an attorney. Despite his explanation of a joint tenancy, he testified: "Before I came over there I had an understanding with my father, that I would leave my apartment and come over and take over the house; under that consideration that I had half the house and I would take care of everything over there in the line of repairs and taxes and feed him and take care of him." Furthermore the trial justice found that the father had the benefit of legal advice and intended to convey a joint tenancy. We cannot say that he was clearly wrong.

However, the complainants and all the respondents excepting Andrew F. and his wife Mary strenuously contend that the findings of the trial justice amounted to an agreement between Andrew F. and his father on which the trial justice based his decision, but no such agreement was alleged in the answer of respondent Andrew F. This they contend clearly demonstrates that the trial justice misconceived the law as stated by this court in *Dolan* v. *Dolan,* 78 R. I. 12, where at page 19 we quoted with approval

Ames, C. J. in *Atlantic Fire and Marine Ins. Co.* v. *Wilson, Gall & Co.*, 5 R. I. 479, as follows: "We should contradict, in the most flagrant manner, the just principle of equity practice which requires, for the purposes both of answer and proof, a fair conformity between the 'allegata' and the 'probata,' upon a bill for relief, if we should allow the complainants, because their proof fails them upon the ground alleged, to obtain relief upon any other ground, and especially upon any ground inconsistent with that."

We do not agree that the rule laid down in *Atlantic Fire and Marine Ins. Co.* v. *Wilson, Gall & Co.* is applicable to the facts in this case. Here complainants allege in their bill:

"Seventh: And your Complainants further aver that the said Andrew McDonough, because of his physical infirmities and his afflictions as aforesaid, and for a convenience to himself and for the sole purpose of enabling the Respondent, Andrew F. McDonough, to manage, control and take care of the aforesaid real estate, to collect rents, pay taxes and water bills and pay for all necessary repairs to the aforedescribed property and to pay for all other expenses incidental to the ownership of said property, and to enable the aforesaid Andrew F. McDonough to carry out all the same, did execute a Quit-Claim Deed to himself and the Respondent, Andrew F. McDonough, as joint tenants, and not as tenants in common, a copy of which Quit-Claim Deed is hereto attached and marked 'Exhibit A'.

Eighth: And your Complainants further aver that when the said Andrew McDonough made the aforesaid conveyance to the said Andrew F. McDonough, the aforesaid conveyance was not made by the said Andrew McDonough with the intent that one-half of said real estate should on the day and date of the aforesaid conveyance belong absolutely and in fee simple to the said Respondent Andrew F. McDonough, and that upon the Death of the said Andrew McDonough, the said real estate should belong to the said Respondent, Andrew F. McDonough, absolutely and in fee simple,

but said conveyance was made solely so as to enable said Respondent, Andrew F. McDonough to manage, control and take care of said real estate for the general convenience of the said Andrew McDonough, and to enable the said Respondent, Andrew F. McDonough, to collect rents, pay taxes and water bills and pay for all necessary repairs to the aforesaid property and to pay for all other expenses incidental to the ownership of said property; and the aforesaid conveyance to the said Respondent, Andrew F. McDonough, was not made as a gift to him, the said Respondent, Andrew F. McDonough, nor as an advancement to him, but solely for the purposes as hereinabove recited, all of which the Respondent well knew, understood and agreed to."

These allegations were categorically denied by respondents Andrew F. McDonough and his wife and it was the burden of complainants to prove them by competent evidence. They called these respondents as their own witnesses under the statute and attempted to elicit testimony in support of their case. They were met by testimony of respondents Andrew F. and his wife Mary which explained the arrangement between him and his father and completely negated complainants' contentions. Called later by their counsel both Andrew F. and his wife testified further as to the arrangement between father and son, and in our view all of this testimony was proper under a general denial to refute the allegations upon which complainants rely.

The complainants' appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court for further proceedings.

ANDREWS, J., did not participate in the decision.

*Goldberg & Goldberg, Philip B. Goldberg, Leo M. Goldberg, Joseph Palmieri, Jacob D. Portnoy,* for complainants.

*Paul F. Murray,* for respondents Andrew F. McDonough and Mary McDonough.

*George Ajootian,* pro se, as Administrator of Estate of Stephen McDonough.