ANNIE F. TALBOT *et al.,* Appellants *vs.* GEORGE A. BRIDGES *et al.,* Appellees.

JUNE 13, 1934.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

SWEENEY, J. The will of Ella M. Nye was admitted to probate by the probate court of Providence. Her next of kin appealed from this action to the Superior Court. After trial in that court, the jury returned a verdict "breaking" the will. The appeal is now before this court on the appellees' exceptions. The only exception necessary to be considered is the one to the denial of appellees' motion that the jury be directed to return a verdict sustaining the will.

Ella M. Nye died February 25, 1931, at the age of eighty-one. Her husband, William G. Nye died in 1918. They had no children. After their marriage in 1890 they lived at the home of Mrs. Nye's parents on Blackstone Boulevard in Providence. After the death of her parents Mr. and Mrs. Nye continued to live at the homestead for several years. Mrs. Nye's widowed sister, Mrs. Willard also lived there. In 1913 they had a disagreement and Mr. and Mrs. Nye went to live at the Hotel Allen. After the death of her husband Mrs. Nye continued to live at the hotel until it was closed in 1930. She then went to live at the Biltmore Hotel where she resided until her death.

Mr. Nye, who was secretary of the Narragansett Electric Company, died testate and gave all his estate, about $40,000, to his wife and appointed her executrix of his will. She declined this trust and a trust company was appointed to administer the estate. After the death of her husband, Franklin L. Hall, who had been an assistant secretary under Mr. Nye, helped Mrs. Nye attend to her business affairs and investments until her death.

In 1902 Mrs. Nye made a will in which she gave all her property to her husband and, in case he predeceased her, then to her sister. In 1928 Mrs. Nye made another will in which she gave $25,000 to Franklin L. Hall and the Rhode Island Hospital Trust Co. in trust to pay the net income to Mrs. Willard during her life. Mrs. Willard died March 22, 1929 at the age of eighty-three. She left a will dated

June 26, 1925, in which she gave Mrs. Nye a life estate in one half of the homestead property and the residue of her estate to the wife of her doctor. Mrs. Nye actively contested the validity of this will but, after a four days trial in the Superior Court, in October, 1930, the jury sustained the will.

April 9, 1929, Mrs. Nye made the will now before this court. By this will Mrs. Nye disposed of an estate of about $80,000, the larger portion of which she received from her husband.

The eight appellants are either first or second cousins of Mrs. Nye. They alleged as reasons for their appeal from the admission to probate of her will that (1) it was not executed as required by law; (2) that she lacked testamentary capacity and (3) that it was procured by undue influence exerted upon her by George A. Bridges, Helen C. Bridges, Franklin L. Hall, Bertha W. Hall and others.

Appellees proved by the testimony of the three subscribing witnesses to the will that it was signed and executed by Mrs. Nye in the manner required by law. § 4303, G. L. 1923. The testimony of these witnesses was not impeached nor contradicted by any evidence offered by the appellants. The trial justice erred in not instructing the jury to this effect as requested by the appellees and thereby remove this ground of appeal from consideration by the jury.

Much testimony was introduced upon the issue of testamentary capacity and undue influence. When denying the appellees' motion for a new trial on the ground that the verdict was against the weight of the evidence, the trial justice wrote a rescript in which he said: "In so far as testamentary capacity is concerned, the court believes that the evidence clearly shows that Mrs. Nye was legally capable of executing a valid will . . . Therefore, the will cannot be attacked on this ground." On the ground of undue influence, he said: "The court realizes that the printed record may indicate, when taken alone, that the contestants failed to prove that charge by a fair preponderance

of the evidence, yet the atmosphere, so-called, of the case, taken in conjunction with the record, can well explain the jury's finding" . . . and approved "the finding that undue influence permeated this will."

This court has consistently held that a motion for a directed verdict should not be granted where the evidence is conflicting upon the material issues and that all reasonable inferences from the evidence must be drawn in favor of the party opposed to the motion. When deciding such a motion the court does not determine the preponderance of the evidence but does decide whether there is any legal evidence to support the contentions of the adverse party. *Saunders* v. *Kenyon*, 52 R. I. 221; *Dawley* v. *Congdon*, 42 R. I. 64; *Reddington* v. *Getchell*, 42 R. I. 439.

The proponents of a will must prove that the testator had testamentary capacity and the persons alleging that the will was procured by undue influence must prove this fact. The evidence tending to prove these facts may be either direct or circumstantial. *Hollingworth* v. *Kresge*, 48 R. I. 341. Having in mind these principles of law, we will consider the evidence.

Mrs. Nye was a woman of intelligence and refinement. Her husband left her in comfortable circumstances. She had no occupation and found enjoyment in meeting her friends and in going to the theatre. For many years she had a checking account in a local trust company and, until shortly before her death, paid her current bills by check. She advised with Mr. Hall about her investments and was friendly with him and his wife and children. The evidence proves that Mrs. Nye's mind was normal until a few days before her death and there is no evidence to the contrary.

Mrs. Nye met Dr. George A. Bridges, an osteopath, while at the office of her physician. In 1921 Dr. Bridges became her physician and for nearly three years she went regularly to his office for treatment; he then treated her at her apartment in the hotel until she died. Her check books prove that she paid Dr. Bridges for his services nearly every

month. Dr. Bridges' wife was also an osteopath. They both became very friendly with Mrs. Nye and took her motoring and entertained her at their home.

Mrs. Nye lived at the Hotel Allen for seventeen years. Contestants called several persons who lived at the hotel to prove that Mrs. Nye was easily influenced. Mr. Ball, the manager, testified that, when he closed the hotel in 1930, Mrs. Nye went to the Biltmore Hotel because he could not provide her with a satisfactory apartment in his new hotel; that he became acquainted with Mr. Hall and Dr. Bridges after Mrs. Nye died; that Dr. Bridges took Mrs. Nye for motor rides once or twice a week and that she said Mr. Hall helped her in her business affairs and that she went out of town many times with the Halls and the Bridges. He said that he never heard Mrs. Nye say anything about giving her property to any particular person, except once when she said that she expected, sometime, if she passed on first, that Mrs. Talbot would be provided for. Mr. Ball was of the opinion that Mrs. Nye could be easily influenced if she thought well of a person. Mr. Ball and his wife both testified that Mrs. Nye went with them on several motor trips to the White Mountains and elsewhere, that she agreed with all their plans and could be influenced to do anything on the trips. Mrs. Ball also testified that Mrs. Nye never talked about her business affairs but that after Mrs. Willard died Mrs. Nye said she would take care of Mrs. Talbot. Mrs. Ball was of the opinion that Mrs. Nye had no set opinions of her own.

Mrs. Butler, mother of Mrs. Ball, testified that she knew Mrs. Nye for sixteen years; that she was a very affectionate woman though not a positive or determined character; that she wanted to please everybody and would give in to others; that she said she intended to take care of Mrs. Talbot but talked mostly about her sister, Mrs. Willard, and that she called Mrs. Ball and Mrs. Bridges "her little girls."

Dr. Pett testified that Mrs. Willard lived with him after 1924 and that she died in March, 1929; that he was her

guardian during the last year of her life and that by her will she gave all her property to his wife; that Mrs. Willard was a woman of strong character and dominant mind; that she was much stronger mentally than her sister; that he became acquainted with Mrs. Nye in 1925 and that she was easily influenced. Seven other persons testified that Mrs. Nye was easily influenced.

The fact that a long and permanent disagreement existed between Mrs. Nye and her sister is unquestioned. Mrs. Nye was afraid of her sister and requested the Balls to keep people away from her room who called at her sister's request. On July 7, 1922, and again on July 14, 1924, Mrs. Nye's attorney notified Mrs. Willard by letter to cease annoying, telephoning to, or calling upon Mrs. Nye.

November 23, 1928, Mrs. Nye consulted an experienced attorney and instructed him about drawing her will. He testified that he drew the will in accordance with Mrs. Nye's instructions and that, after he had carefully explained it to her, she executed it November 28, 1928. He further testified that Mrs. Nye was at that time a normal, intelligent woman.

The will contained a trust provision in which the income from $25,000 was to be paid to Mrs. Willard during her life and, upon her death, $3,000 was to be given to an osteopathic clinic and the remainder to Franklin C. Hall and his wife, or their heirs. Mrs. Helen C. Bridges was given $12,000. Mrs. Nye also made pecuniary bequests to several friends and gave $300 to her cousin, Mrs. Talbot.

Mrs. Willard died in 1929 leaving a will in which she gave all her property to the wife of her guardian. Mrs. Nye wished to contest this will. She met a reputable lawyer by appointment at a hotel and talked with him about contesting her sister's will and also about making a new will. Later she conferred with the attorney at his office and gave him her former will and instructions relative to the proposed changes in it. Shortly before this she had talked about the changes she wished to make in her will with Dr. and

Mrs. Bridges and Dr. Bridges made a memorandum of the proposed changes which she subsequently gave to her attorney. The Bridges were not present at the conferences between Mrs. Nye and her attorney relative to her will and Mr. Hall knew nothing about it.

The attorney testified that the will was written in accordance with Mrs. Nye's instructions and that it was explained to her before she executed it and that, in his opinion, she was then of sound mind.

The wills are the same in many respects. None of the legatees in the former will are omitted. The gift to Mrs. Talbot is the same, and five other cousins and several friends (not mentioned in the former will) receive pecuniary gifts. The substantial changes are that a gift to Helen C. Bridges is increased from $12,000 to $25,000 and she is given one half of the residuum of the estate, and that the gifts to Mr. and Mrs. Hall are thus decreased. It is obvious that the testatrix intended her friends, the Halls and Bridges, should receive about the same portion of her estate.

The appellees called several witnesses who testified to the effect that Mrs. Nye was a woman of great strength of character and clearness of mind. Indicative of having her own way, she insisted—against the advice of her attorney—upon contesting her sister's will and took an active part in the preparation of the case for trial, appeared in court every day and testified and was cross-examined by one of the attorneys for the present appellants.

Nothing appears in the evidence in the present case tending to show that at this time Mrs. Nye was not a woman of sound mind or that she was easily influenced. Mr. and Mrs. Hall and Dr. and Mrs. Bridges testified at length as to their relations—business and social—with Mrs. Nye and they were cross-examined at length. There is nothing in their testimony tending to prove that either of them exercised undue influence upon Mrs. Nye in procuring the making of her will in their favor. The testimony

proves that these principal legatees were kind and attentive to Mrs. Nye and did a great deal to make her life happy after the death of her husband.

True it is that these legatees had an opportunity to influence Mrs. Nye in disposing of her property and undoubtedly their kindness and consideration did influence her in providing generously for them in her will, still, such conduct is permissible and cannot be called undue influence. Influence to be "undue" and invalidate a will must be the "substitution of the will of another person for the free will and choice of the testator" in making a testamentary disposition of his property. *Calderone* v. *Calderone*, 48 R. I. 163.

In *Campbell* v. *Rhode Island Hospital Trust Co.*, 125 Atl. (R. I.) 220, this court said: "Evidence of opportunity, unaccompanied by evidence, direct or indirect, that such influence was exerted, does not warrant the submission of the issue to the jury, nor will it support a finding that the instrument was the result of undue influence." See also *Di Benedetto* v. *Capone*, 148 Atl. (R. I.) 184; *Briggs* v. *Briggs*, 92 Atl. (R. I.) 571; *Walker* v. *Walker*, 67 Atl. (R. I.) 519. Influence gained by kindness and affection will not be regarded as undue if no imposition or fraud be practiced on the testator and if the disposition of his property is voluntarily made. *Campbell* v. *Rhode Island Hospital Trust Co.*, *supra*.

We have duly considered the evidence and fail to find any evidence of lack of testamentary capacity on the part of Mrs. Nye when she executed her will. We also find there is an entire lack of legal evidence that the will was procured by undue influence exerted upon her. Therefore the exception to the denial of the motion for a directed verdict in favor of the will is sustained.

On June 19, 1934, at 9 o'clock, a. m., the appellants may appear before this court and show cause, if any they have, why the case should not be remitted to the Superior Court

with direction to enter a decree affirming the decree of the probate court.

*Grim & Littlefield, Benjamin W. Grim, Matthew W. Goring,* for appellants.

*Tillinghast & Collins, Emerson & Mason, James C. Collins, Frank F. Mason,* for appellees.