RUTH HEROUX *vs.* EVELINA M. HEROUX, *Ex.*

APRIL 15, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

FLYNN, C. J. This is a probate appeal from a decree entered in the probate court of Woonsocket, allowing a certain written instrument, dated June 29, 1934, as the last will of Onesime Heroux, and appointing Evelina M. Heroux as executrix thereof. From this decree, the contestant claimed an appeal to the superior court, where the case was tried and resulted in a verdict of the jury that the instrument in question was not the last will and testament of said Onesime Heroux. The executrix, Evelina M. Heroux, hereafter called the proponent, filed a motion for a new trial upon the usual grounds and also upon alleged newly discovered evidence. At the hearing on this motion,

however, she abandoned the last-mentioned ground, and the trial justice then denied her motion for a new trial, to which ruling the proponent excepted. The case is before us upon the proponent's bill of exceptions, to the ruling of the trial justice, refusing to grant her motion for a new trial, and to certain other rulings made in the course of the trial.

The proponent expressly waives all but the following seven exceptions, numbered one, two, three, eight, eleven, twelve and thirteen in her bill of exceptions.

Exceptions one and two relate to the introduction in evidence of the will of Melina E. Heroux, deceased first wife of the testator, and the mother of the contestant, Ruth Heroux. It was linked up in evidence with a reciprocal will of Onesime Heroux, made at the same time, and also with a later will of Onesime Heroux in which he gave all his property to his daughter Ruth. Considered in connection with all of the evidence, it appears to be relevant to the inquiry whether the change by the testator in the disposition of his property was natural and voluntary, or was brought about by alleged undue influence exerted upon him by the proponent. Therefore, the proponent's exceptions one and two are overruled.

Exception three concerns the allowance, in cross-examination, of testimony relating to an attorney's fee for previous services in connection with the will in question, and when it was paid by the proponent. If such testimony was admitted erroneously, we think it was harmless in view of testimony of substantially the same character, later admitted without objection. Counsel for proponent seems to argue more about the prejudice from the court's remarks, but this exception does not relate thereto. Exceptions three is therefore overruled.

Exception eight relates to permission by the court of an inquiry concerning amounts and withdrawals by proponent of various bank deposits which stood in the joint names of herself and the testator, and concerning the present loca-

tion and disposition of the proceeds. While perhaps this inquiry, if extended too far, would be more properly the subject of a suit in equity, or of some other proceeding against the executrix, we cannot say that it was so extended as to constitute reversible error under all the circumstances here. This evidence must be considered in connection with an inventory, amounting to $750, rendered in the estate at the instance of the proponent as executrix; with the previous will of the testator giving all his property to Ruth; and with the present alleged will, which cut off Ruth with $25 and gave all the rest to the proponent. It can be fairly argued from such consideration that this testimony had some bearing on the issue of the naturalness of the will in question and upon the good faith of the proponent, particularly when considered in connection with other evidence of the proponent's general disposition toward Ruth, and her alleged conduct toward the testator. Moreover, similar testimony, in substance or effect, was apparently admitted without objection. Exception eight, therefore, relates to harmless error, if any, and is overruled.

Exceptions eleven, twelve and thirteen may be considered together, as they refer to the trial court's refusal to grant a new trial to the proponent on the grounds that the verdict was against the law, the evidence and the weight thereof. Nothing is shown to warrant a conclusion that the jury refused to follow the law as charged and no exception to the charge is before us. The proponent therefore relies on her contention that the verdict is against the evidence and the weight thereof.

Two issues were presented by the evidence, namely, whether the testator possessed testamentary capacity, and secondly, whether the proponent procured the present will by the exercise of undue influence upon the testator. The jury's verdict was general, no special finding having been requested. Therefore, if the evidence justifies a verdict upon either issue, the trial court should be sustained.

Granting that the evidence supports the conclusion that Onesime Heroux possessed testamentary capacity to make the will in question, we are of the opinion that there was ample evidence, if believed, together with reasonable inferences therefrom, to support the finding that this will was brought about by undue influence exerted upon the testator by the proponent.

The following facts, among others, appear from the evidence. The testator was over sixty-nine years of age when he made the will in question. He had lived forty-seven years of happy married life with his first wife, Melina E. Heroux, and one child of that union, Ruth Heroux, survived. Reciprocal wills were made in 1930 by the testator and his first wife, as the result of a mutual intent that the survivor of them would then provide adequately for their only living child, Ruth.

In 1932, Ruth Heroux, who had been married and divorced, returned home to care for her mother in her last illness and remained, after her mother's death, to take her place as keeper of her father's household, which included cooking, laundering and caring for him. In 1933, pursuant to the underlying intent of previous mutual wills, Onesime Heroux executed a will in which he gave all his property to his daughter, Ruth Heroux, the contestant. Ruth continued to live at his home and to take good care of that home and of her father, and between them there was apparently mutual love and affection. The testator, before his chance meeting with the proponent, was a shrewd, temperate, home-loving man of regular habits. He was religious and not given to profane language or violent exhibitions of temper; nor to keeping late hours in dining and dancing at roadhouses; nor to indulgence in strong liquor.

There is evidence, if believed, that a transformation in his whole character and habits of life took place, dating from the time when the proponent displayed special interest in him. There is testimony on behalf of the contestant which, if believed, tends to show that the testator's entire

acquaintance and courtship with the proponent covered a period of only about six months; that the proponent was a graduate nurse, some thirty-one years younger than the testator; that notwithstanding his very serious heart condition, which had existed for a year or more previous to his death, the testator was influenced to change his mode of living; that he began to frequent, several times per week, roadhouses for dining, dancing and drinking until the early hours of the morning, and then would get up at 5:30 in the same morning to drive the proponent about thirty miles to her work, and to return to his own home for his breakfast and then to go to his own work; that he acquired a new habit of drinking strong liquor to the extent of carrying it in his automobile; that he began to become irritable and to show, as never before, violence and temper; that he began to give to his co-workers definite signs of a failing memory and a reduced physical and mental efficiency in the performance of his work at the bank, and appeared, after making the will, to feel that he had acted toward Ruth differently from what he wanted to do. What part, if any, the proponent played in this transformation and whether it led to the weakening of his will and the exertion of undue influence thereon by the proponent, as alleged by the contestant, are matters that were emphatically disputed by the proponent and left upon the evidence for the jury to determine.

The evidence also discloses that the testator had a nervous attack or breakdown only a month before he made the will and married the proponent; that the proponent took him to a doctor in Providence of her selection to be examined physically before her marriage, the purpose thereof being the subject of different interpretations; that the proponent was present personally with the testator, when the will was discussed with the lawyer and later executed; that she also accompanied the testator to the lawyer's office before her marriage, when arrangements were made to transfer all of his real estate for the benefit of the

proponent and when the testator executed a deed to make this disposition possible; that the plans for the marriage, and the marriage itself, were kept secret from the testator's daughter, Ruth, and from his associates at the bank, where he worked; that after the marriage he continued to live not with his wife but in his own home, where his daughter Ruth continued to keep house and to cook and to care for him as she had previously done; that, prior to the marriage and making of the will, there was an increasing unfriendliness between the proponent and Ruth Heroux; that immediately following his death, the proponent took certain personal property, belonging to the testator from his person, including money from his pockets and the wedding ring of his first wife; that she also took over his clothing, automobile, and Masonic regalia without any delay.

The proponent asserts that all these articles were given to her by the testator, during his life, and that she desired to obtain them before Ruth Heroux could get them. The contestant on the other hand, alleges that it shows a consistent course of conduct by the proponent, from her first meeting with the testator up to his death, probative of a design by the proponent to completely acquire everything of value which the testator possessed, whether it was real or personal property. It is true that a great deal of this testimony was sharply denied by the proponent and otherwise was explained by her. Some of her explanations however do not appear entirely consistent with some of her own testimony, particularly concerning her knowledge of and presence during preparations for the execution of the will, and of the deed which eventually resulted in transferring the testator's real estate into a joint tenancy with the proponent. In some aspects, too, her testimony appears to be contradicted by the attorney and his clerk, who prepared the will and deeds. It is not denied that arrangements were made at the same time with the same lawyer to prepare another reciprocal will to be executed by the

proponent for the benefit of the testator, but that the proponent never returned to execute such will, although it was so prepared. There was considerable other evidence which presented a graphic moving picture of exciting events, covering a period of six months and bearing in various ways upon the questions involved in the case.

This court has held that the elements of undue influence vary so greatly that the presence or absence thereof depends upon the particular circumstances of each case. *Caldarone* v. *Caldarone,* 48 R. I. 163, 165. While the burden of proving the testamentary capacity of the testator was upon the proponent, the burden of proof of undue influence is on the contestant of the will. To sustain this burden, direct evidence is not indispensable. From the nature of the issue circumstantial evidence is often the only evidence which can be presented. The facts and circumstances relevant to each case and the reasonable inferences therefrom are frequently of great persuasive weight in the decision of the issue of undue influence. *Goff* v. *Clinton,* 53 R. I. 70, 75; *Young* v. *Young,* 56 R. I. 401, and cases cited.

In the instant case, it seems clear from the evidence that the proponent had numerous and peculiar opportunities to influence the testator. It is likewise in evidence, particularly by the testimony of Dr. Fontaine, that many of the symptoms set forth in the other testimony, if believed, would suggest a mental deterioration on the part of the testator, which would cause his mind to be influenced more easily than would have been the case previously to the appearance of these symptoms. Doctor Fontaine was an expert on mental diseases, who attended the testator at different times and at the time of his death, and was called as a witness by the proponent.

Whether the proponent, having the opportunities, had also the disposition to influence the testator and whether she did in fact so influence him; and whether that influence, if any, was prompted by mere kindness and affection

and was always in good faith on her part; or whether it was improper and designed to dominate his will, and did so, to the extent of substituting her own will for his in the making of this instrument; and whether her conduct was part of a plan to obtain all of the testator's property and to especially exclude Ruth Heroux from any of its benefits, although the testator had expressly made Ruth the sole beneficiary of his previous will, with the evidence showing no adequate reason for the testator to change so quickly and radically against her, were all facts exhaustively detailed by the evidence, and presented issues to be considered and determined by the jury upon all of the evidence, much of which was sharply conflicting. The jury had the opportunity of seeing and hearing the witnesses and apparently believed the contestant and decided against the proponent. The trial justice, who had a similar opportunity to observe the witnesses, and evaluate the weight of their testimony, has expressly approved the verdict.

After a consideration of all of the evidence and circumstances, we cannot say that the proponent has established that the trial justice was clearly wrong in denying her motion for a new trial.

All of the appellee's exceptions, therefore, are overruled and the case is remitted to the superior court for further proceedings following the verdict.

*Walling & Walling, Everett L. Walling, Ambrose W. Carroll,* for appellee.

*Charles B. Coppen, Emile H. Ruch,* for appellant.