JULES TALON *et al. vs.* CHARLES JACKSON, *Ex.*

MARCH 20, 1941.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J.   This is an appeal from a decree of the probate court of the city of Pawtucket admitting an instrument

purporting to be the last will and testament of Ezilda Mercier, deceased, to probate. The appeal was tried before a justice of the superior court and a jury, and it is here on appellants' exception to the ruling of said justice directing a verdict sustaining the will.

The appellants are a brother and four sisters of Ezilda and are her next of kin. The appellee is the executor of her will and the husband of Lucy Jackson, nee Mercier, a sister of the late Joseph Mercier, deceased husband of Ezilda.

By the terms of the alleged will the appellee received all of the estate of the testatrix, excepting only a mortgage which she held on the home of some of the appellants and which she directed to be canceled if it was unpaid at her death. The appellee was also named executor of the will and was expressly exempted from furnishing any surety on his official bond.

The appellants contend that the alleged will is not the will of Ezilda Mercier because, at the time she executed it, she lacked testamentary capacity and was subjected to undue influence exercised over her by appellee, Charles Jackson, and his wife Lucy. On the other hand, appellee contends that the trial justice did not err in granting his motion for a directed verdict sustaining the will because there was no legal evidence of either of the above grounds presented in the trial in the superior court.

The parties are in agreement on the law which governs a case of this kind. They recognize that, on the issues raised by appellants' appeal, the burden is on the appellants to prove undue influence, and on the appellee to prove testamentary capacity. *Young* v. *Young,* 56 R. I. 401, 185 A. 901; *Talbot* v. *Bridges,* 54 R. I. 337, 173 A. 72. It is also recognized that in a case of this kind the rules governing the consideration of a motion for a directed verdict are applicable, and hence that all of the evidence of the adverse

party to such a motion must be taken as true; that all reasonable inferences must be drawn therefrom in favor of such party; and that such motion cannot be granted, if on any reasonable view of the evidence the adverse party can prevail. *Young* v.. *Young, supra.*

The only question before us is whether or not there is any evidence in the record from which the jury could reasonably find for the appellants on either issue raised by their appeal. In determining this question it is our duty, as it was also the duty of the trial justice, to keep in mind the rules above set forth. Adherence to those rules necessarily restricts the range of consideration of the evidence on a motion for a directed verdict. The weight of the evidence and the credibility of the witnesses must be laid to one side. Also, reasonable inferences from the evidence not favorable to the adverse party to the motion must be rejected, while all reasonable inferences favorable to such party must be accepted and given effect.

After examining the evidence and giving to the appellants the full benefit of the above-stated rules, we are of the opinion that the trial justice erred in granting appellee's motion for a directed verdict. We shall hereinafter point out some aspects of the evidence which lead us to this conclusion. We may observe at the outset however that it is not any single fact, but a series of facts taken together in their relation to each other, which has convinced us that this case should have been submitted to the jury.

A few weeks after the testatrix executed her will the appellee was, on the petition of the testatrix, appointed her conservator, on the ground that she was unable to manage her estate. This petition was dated December 4, 1937. On that date the testatrix consulted counsel about drafting her will and gave him instructions therefor as to how she wished to dispose of her property. Whether she signed the petition for the appointment of a conservator on that date or a few

days later is open to question. The inference most favorable to the appellants is that she signed it on that date. This was two days before she executed her will, on December 6, 1937. The appellee was the person who telephoned for counsel to meet the testatrix at the Credit Union Bank in Central Falls where, on December 4, 1937, counsel received instructions from the testatrix as to the provisions of her will, and where later, on December 6, 1937, the will was executed. The appellee and his wife were at the bank with the testatrix on December 4, 1937, when counsel arrived, and they accompanied the testatrix and her counsel into the directors' room, where, through an officer of the bank who acted as an interpreter, instructions were given by the testatrix to counsel to draw her will leaving practically all of her property to the appellee.

At this time testatrix was living at the home of the appellant Jules Talon, her brother, and appellants Hermina Talon and Elzire Talon, her sisters, in Central Falls. She had been there with them since six months after the death of her daughter, Ernestine Mercier, on January 19, 1936. She did not pay any board there and she was not asked for any, although she had a bedroom of her own. On a number of occasions she said to her sisters with whom she was living, and to some of her other kin, that she was going to leave all her property to her brother and sisters. Appellant Hermina Talon testified that her sister said to her almost every day that she would leave them her property. While testatrix was living with her sisters she appeared happy and contented and her relations with them were pleasant and unmarred by any ill-feeling. She had gone to live with them voluntarily, and never expressed to anyone in the house a desire to go and live elsewhere. Nevertheless, without informing them of any intention to leave their home, she went out on February 25, 1939 with the appellee and his wife for an automobile ride, as she had frequently done before, but from this ride she went to the appellee's home in Pawtucket, and never re-

turned to the home of her brother and sisters in Central Falls. Thereafter she continued to live, until her death, with the appellee. She never informed her brother or her sisters why she had left their home, nor did she ever tell any of them that she had made a will.

From this evidence the jury might well consider that it was significant that the appellee took no personal interest in the testatrix until after he became executor of her daughter Ernestine's will, under which the testatrix was the sole beneficiary of an estate of about $22,000; that thereafter and before the instant will was drawn, the appellee and his wife began taking testatrix for long automobile trips in the country and to the seashore; that this continued for a long time during which appellee and his wife avoided appellants, with whom the testatrix lived, and never once called at the home of her sisters for her; and that when the testatrix returned with appellee and his wife from such rides, they similarly avoided meeting the appellants.

One of the appellants testified that when the testatrix left to go on such rides she would appear to be good natured but upon her return "she appeared to be mad at us." On one occasion, upon returning from a ride, the testatrix surprised her brother and sisters by complaining to them that "they were trying to get all her money." The appellants disclaimed any such intention and insured the testatrix to that effect, and nothing more was said about the matter. However, it was after this incident that the testatrix left the house of her brother and sisters and went to live with the appellee and his wife. Before that time she had already executed her will in favor of the appellee, but she never informed her brother and sisters of the fact, although they did learn from the probate notice which was advertised in the newspaper that the appellee had been appointed her conservator.

When such facts are taken together and in combination with other facts in the record, there is room for reasonable

inferences to be drawn by a jury that appellee took advantage of the opportunity which was admittedly open to him to exercise undue influence over the testatrix, and with signal success to his own fortunes. In the face of the appellee's silence, it would be reasonable for the jury to infer that he undermined the confidence which the testatrix reposed in her own kin and at the same time ingratiated himself in her favor by taking her for rides where he could work upon her will, already shaken by grief and loneliness and weakened by advancing senility.

Whether this was the purpose of his assiduous attentions to the testatrix when the knowledge came to him of the substantial size of her estate may or may not be a fact; but under all of the evidence and circumstances of the case when viewed most favorably to the appellants, some explanation by the appellee seems to be called for. He ought to come forward and give it, if he can, or inferences unfavorable to him may be justifiably drawn from the evidence. In other words, a testamentary disposition of the kind before us, while it is not of itself proof of undue influence, might well be reasonably taken by the jury, in combination with other pertinent facts concerning the relations between appellee and the testatrix, to raise an inference of such influence.

In this connection we think it especially appropriate to repeat what we recently said in *Reynolds* v. *Marsden,* 60 R. I. 91, 197 A. 193, 195. "The appellee did not himself give any testimony, nor introduce on his own behalf any evidence, which might have explained satisfactorily such inferences as could reasonably be drawn in the appellant's favor by the jury from the evidence then in the case. On the contrary, at the conclusion of the appellant's evidence, the appellee closed his case and moved at once for a directed verdict in his favor . . . ." Here the appellee did the same, notwithstanding that the will in his favor was in a sense an unnatural one and made at a time when, for some reason,

the testatrix was seeking, or about to seek, the appointment of a conservator to manage her affairs.

While the instant case is not identical with the case of *Huebel* v. *Baldwin,* 45 R. I. 40, there are significant similarities in the evidence here which place both cases in the same category. In that case this court, in overruling the trial justice's direction of a verdict for the appellee, at the close of the appellant's evidence, said, at page 44: "Undue influence in many cases can only be proved by circumstantial evidence. Facts and inferences which when considered singly are of slight and of different degrees of evidentiary weight may often when considered in combination properly be held to furnish sufficient proof of undue influence. Each case must be judged on the facts of the particular case."

The court then went on to point out in that case that the terms of the will, giving everything to the appellee, a stranger in blood, to the exclusion of the niece of the testatrix, her sole heir and next of kin, for whom she at other times had expressed an intention to provide, naturally challenged an explanation, stating at page 45: "Although it may be an overstatement to say that the will is unnatural, as this term is sometimes used, nevertheless the nature of the will is so unusual . . . that one instinctively seeks for an explanation which the facts seem to require."

Tested by the standards laid down in that case, there was evidence in the instant case which required the submission of the case to the jury, at least on the issue of undue influence. As to the issue of testamentary capacity, we do not feel called upon at this time to say whether or not, on the evidence here, that issue should also have been submitted to the jury, since the case must be remitted for a new trial.

For the reasons above given, the appellants' exception to the ruling of the trial justice, granting appellee's motion to direct a verdict in his favor, is sustained, and the case is remitted to the superior court for a new trial.

*Thomas L. Carty, Thomas F. Vance,* for appellants.

*Corcoran & Mangan, Thomas P. Corcoran, Charles E. Mangan,* for appellee.