Domenico Lomastro *et al. vs.*

Nicolena Hamilton *et al., Ex'rs.*

AUGUST 17, 1949.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Baker, J. This is an appeal from the probate of a will. After a trial in the superior court the jury returned a verdict sustaining the will. Thereafter the appellants' motion for a new trial was denied by the trial justice and they duly prosecuted their bill of exceptions to this court.

The exceptions contained therein are to certain rulings of the trial justice in admitting and rejecting evidence; to

his ruling permitting the appellees to reopen their case after the motion for a directed verdict had been denied; and to his failure to grant appellants' motion for a new trial. As presented they rest their case, in so far as the will itself is concerned, on the sole contention that it was obtained through undue influence exercised upon the testator Giovanni Lomastro. The transcript of testimony shows that appellants' counsel stated they were not attacking the will on the issue of testamentary capacity, and that issue is not now briefed or argued. The appellants, who take nothing under the will, are four children of the testator who was a widower. The appellees are two other children who receive his estate under that instrument.

The appellants contend that the trial justice erred in allowing a subscribing witness to the will to testify as to the testator's mental condition and in refusing to strike out the answer as given. In view of the fact that the appellants are not questioning the testator's mental capacity we find that the exception raises a question which is now in effect moot, and the appellants' first exception is overruled.

The transcript shows that the appellants called as their witness the appellee Crastise Lomastro. He was asked in direct examination whether he had been convicted of a crime and the trial justice sustained the appellees' objection to such question. The witness apparently was called and examined under the provisions of public laws 1939, chapter 705, which states that the witness "may be examined as if under cross-examination, at the instance of any adverse party, and for that purpose may be compelled in the same manner, and subject to the same rules of examination, as any other witness to testify * * *. The party who produces such witness for examination, shall not impeach his credit by evidence of bad character, but may contradict him by other evidence * * *."

Upon consideration we are of the opinion that the ruling of the trial justice was correct. The matter involves a con-

struction of the above statute. It is true that the witness is to be examined as if under cross-examination, and we may assume as correct for the purposes of this case the appellants' contention that ordinarily under those conditions a witness may be asked the question in issue here. However, in this instance the witness did not offer himself but was called by the adverse party. The statute specifically provides that in such circumstances the party producing the witness "shall not impeach his credit by evidence of bad character * * *." That provision apparently is a limitation on the general rule governing the scope of cross-examination in such circumstances. In our judgment the question excluded was to elicit testimony which would impeach the credit of the witness by evidence of bad character. The fact that such testimony was to be from the witness himself makes it inadmissible under the statute. The appellants' second exception is overruled.

Their fourth exception is to the ruling of the trial justice allowing the appellees to reopen their case after their motion for a directed verdict had been denied. An examination of cases decided by this court shows that trial justices have in the past granted some and denied other similar requests to introduce further testimony in circumstances generally similar to those existing in the present case. The broad rule adopted by this court to govern such a situation is that the reopening of the case for the above purpose is within the discretion of the trial court. *Hampson* v. *Taylor*, 15 R. I. 83; *Anderton* v. *Blais*, 28 R. I. 78; *Horton* v. *Cray*, (R. I.), 133 A. 811; *E. S. Company* v. *Rocheleau*, 52 R. I. 378. In the *Anderton* case the following language appears at page 79: "And it is well settled that it is within the discretion of the court to allow the introduction of pertinent evidence at any time during the trial of the case." We have examined the transcript herein and we cannot say that in the circumstances the trial justice abused his discretion in permitting the appellees to reopen their case and introduce further evidence.

The transcript shows that, in deciding their motion to reopen, the trial justice said: "Now, Mr. Boudreau moves to reopen his case to put on two witnesses. Mr. Votolato objects but admits he is not surprised, and not prejudiced, and I will grant the motion and note Mr. Votolato's exception." We observe, however, that the granting of such a motion should not be a mere formality but should rest on the exercise of sound judicial discretion, taking into consideration the facts then before the trial justice, and that an attorney who purposely withholds a necessary part of his case does so at the risk of being unable to present it thereafter. In support of their position on the point under consideration the appellants have called our attention to *Huebel* v. *Baldwin,* 45 R. I. 40. In our opinion that case is clearly distinguishable from the instant one. There it was held that certain conduct on the part of proponents in a will contest had the effect of closing their case. It does not appear, however, that any motion to be allowed to reopen was made by them and therefore the question we have before us was not involved in that case. The appellants' fourth exception is overruled.

The remaining exception is to the denial by the trial justice of the appellants' motion for a new trial. It is their contention that on the question of the exercise of undue influence by the appellees and others the verdict is against the law and the evidence. In support of their claim the appellants argue among other things that the appellees had the opportunity to exercise such influence; that the will was an unnatural will in that without rational ground it cut them off entirely and also left nothing to the children of two deceased sons of the testator; that regarding the capacity of the testator to resist undue influence the testimony of the attending physician should outweigh that of the attorney who drew the will and attended to its execution; that none of the appellants knew that the testator had made a will until after his death; that he may have been confused concerning his will and his policy of

insurance; that the fact that the testator after drawing his will and leaving the hospital went to live with one of the appellants was inconsistent with cutting that appellant out of the will; and that the attorney who drew the will was the agent for the appellees.

It appears from the evidence that the testator had worked steadily as a grinder for many years and had acquired some property. At the time of his death on August 6, 1947 at the age of seventy-four he apparently had no personal estate but had an interest in real estate situated in Providence and in Cranston. He was survived by six children, the parties herein, and by several grandchildren.

The will involved in this case was executed by him in Saint Joseph's Hospital on March 15, 1947 at a time when he was there for observation. The evidence shows that a few days prior to March 15 he asked the appellees to consult a certain undertaker with regard to having a will drawn. The latter informed the appellees, when approached by them, that he could not draw a will and referred them to the attorney who ultimately drew the will in question. The appellee Nicolena Hamilton communicated with this attorney on March 14 and it was arranged that he should go to the hospital the following morning to talk with the testator. The appellees and the attorney went there about 10 a.m. and he was introduced to the testator by the appellees. The attorney had not previously known any of these persons. After some talk about mutual friends the attorney asked the appellees to leave the room and he then received the testator's instructions respecting his will. At this time he was sitting up in bed and the attorney testified that the testator gave reasons for the disposition of his property and seemed very alert and intelligent.

Thereafter the attorney returned to his office and drew the will following the testator's instructions. On the afternoon of that day the attorney went to the hospital with his secretary about 2:30 p.m. and after waiting about half

an hour was admitted to the testator's room. The latter could not read or write and the attorney read the will to him in English and translated it into Italian. The testator, whose physical and mental condition, according to the lawyer, were the same as in the morning of that day said the will was very good and it was then duly executed. The appellees were not in the hospital at that time. The attorney kept the will in his possession at the testator's request.

The hospital record and the evidence showed that at the suggestion of his doctor, who was not aware that the attorney had visited the testator, a blood transfusion was administered about 11:30 o'clock in the morning of March 15 as the patient complained of weakness. There was testimony that such a transfusion after a couple of hours would have the effect of strengthening the patient and making him mentally clear. The testator left the hospital a few days after signing his will and returned to his house. He had previously lived in the first-floor tenement with his son, the appellant Domenico Lomastro, but on his return went to the second-floor tenement which was occupied by the appellant Agnes Cambio, a daughter. He died without asking for his will and without again seeing the attorney. The will was admitted to probate in Providence November 24, 1947.

On the issue of undue influence conflicting inferences could be drawn from the evidence. Obviously the personal feelings of the parties entered into the case to a considerable degree. The appellants, who had the burden of proof on that issue, presented no direct evidence of specific instances where the appellees attempted to exercise any such influence. The former's case apparently rests largely on suspicion and on general inferences which they claim should be drawn from the facts. It would not seem that the appellees had any greater opportunity to influence their father than his other children, the appellants; but even if such an opportunity existed it has been held that it will not support a

finding that the instrument was the result of undue influence, unless accompanied by evidence either direct or circumstantial that such influence was exercised. *Talbot* v. *Bridges,* 54 R. I. 337; *Reynolds* v. *Marsden,* 60 R. I. 91. The appellees denied that they influenced their father to leave them his interest in the property involved. In fact it was their testimony that they did not know the contents of the will until after his death.

The contention of the appellants that the attorney was in effect the agent for the appellees in this matter presented a clear issue of fact for the jury to pass upon. The appellants argue in substance that it should be inferred from the evidence that the attorney actually drew the will at the suggestion of the appellees. The jury evidently refused to take that view of the matter. It is plain from the record that the attorney made a good witness and that the jury accepted his testimony in respect to the drawing of the will, and in regard to the extent of the testator's mental alertness.

The appellants also urge that the will is unnatural and that being the case the burden is upon the appellees to give a reasonable explanation of why it was so drawn. The appellants cite several authorities which tend to support the above contention. Among them are *Di Orio* v. *Cenci,* 54 R. I. 441, and *Mullen* v. *McKeon,* 25 R. I. 305. Those cases undoubtedly state correctly the law in relation to undue influence in will cases, but on examination their facts differ so materially from those in the instant case that they are of little assistance. Moreover, the appellees here gave an explanation of the terms of the will which they claim sustained the burden imposed on them and which clearly satisfied the jury.

The will contained the statement that the testator intentionally omitted without accident or mistake the four appellants, naming them, so that they would not take under the will "as they have been amply provided for during my lifetime." It appeared in substance from the testimony of

the attorney that the testator, in response to questions concerning the reason for the omission of the appellants, had told him that they had lived on him and that he did not owe them anything. He also added that they had "treated him like a dog," particularly one of them, and that they had shown him very little respect. The attorney testified that he did not wish to put the latter part of this statement in the will so he used the language commonly employed in such circumstances, which in fact substantially conformed with the first part of the testator's statement. On the part of the appellants there was, however, testimony that they had always treated the testator properly.

Additional evidence explaining the will was also submitted on behalf of the appellees to the effect that the testator wished his property to go to them because Nicolena his youngest child was his favorite and had looked out for him after the other children married and after his wife's death. As to the appellee Crastise Lomastro the testator felt that he should favor him because Crastise had been in prison and for that reason would have difficulty in making his way.

The appellants likewise argue that the evidence viewed as a whole shows that it is doubtful whether the testator, by his subsequent conduct, fully understood that he made a will disinheriting the appellants; that they knew nothing about the will; and that its existence was not mentioned even though upon his return from the hospital he lived in the tenement with the appellee Crastise and the appellant Agnes Cambio for over five months until his death. It was, however, for the jury to draw inferences and deductions from the entire evidence in relation to these matters and the ones they drew were favorable to the appellees.

The trial justice, who had seen and heard the witnesses testify which is important in a case of this kind where the principal issues are the credibility of the witnesses and the weight of the evidence, upheld in forceful language the verdict of the jury sustaining the will. He said: "I think

the verdict does substantial justice and it is fully supported by overwhelming evidence." We have considered the evidence and are of the opinion that we cannot say in the circumstances that his decision denying the appellants' motion for a new trial was clearly wrong. The appellants' exception to his refusal to grant them a new trial is overruled.

All of the appellants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

*Philip S. Knauer, Arthur N. Votolato,* for appellants.

*Carl Testa, Harlow & Boudreau, Alfred H. O. Boudreau,* for appellees.