Lucy P. MURPHY et al.

v.

James L. O'NEILL and Francis Castrovillari, Administrators, c.t.a.[1]

No. 80–175–Appeal.

Supreme Court of Rhode Island.

Jan. 7, 1983.

1. The testatrix designated her son Rocco as the executor of her last will and testament. Apparently, while the petition was pending in the Probate Court, for some reason Rocco decided not to accept the office, and the attorneys for the proponents and some of the contestants were named "co-executors." When the appeal reached the Superior Court, the attorney representing the contesting children renounced the appointment, and Francis Castrovillari was substituted in his stead. The designation of the substitute fiduciaries as coexecutors is technically incorrect because G.L.1956 (1969 Reenactment) § 33–8–4 provides that if a person named as executor is deceased, incompetent, or refuses to accept the trust, the court shall grant letters testamentary to any other executor named in the will. Otherwise, the court shall appoint some suitable person as administrator "with the will annexed."

Nugent & Nugent, J. Joseph Nugent, Sr., Providence, for plaintiffs.

James L. O'Neill, pro se.

## OPINION

KELLEHER, Justice.

This is a will contest heard by a Superior Court jury on appeal from a decree of the Probate Court of the Town of Johnston, entered August 2, 1976, admitting to probate an instrument purported to be the last will and testament of Lucy Almeida. A timely appeal was taken to the Superior Court by contestants of the will, three children of the testatrix. Later, eight grandchildren of the testatrix, children of a deceased daughter, were allowed to intervene in this appeal. At one point it appeared that a settlement had been reached between the groups of litigants, but the grandchildren claimed they were not bound by its terms. The coadministrators' motion to enforce the settlement was denied, and the appeal proceeded to trial. The jury, in response to special interrogatories, found that the testatrix had the necessary testamentary capacity but that the will was the product of undue influence on the part of her son Rocco Mascarelli. The proponents of the will, coadministrators, are now before us claiming numerous errors in the proceedings below. However, there is no need for us to address each of their claims since we find that the trial justice incorrectly charged the jury regarding the burden of proving undue influence.

The trial justice, as he began his instructions to the jury on the subject of undue influence, stated that the burden of proving undue influence was on the contestants. However, he subsequently instructed the jury that if it found that Rocco "stood in a relationship of trust and confidence to the testatrix," then the burden of proving that the will was *not* a product of undue influence shifted to the proponents. In making this switch, the trial justice erred.

The erroneous nature of the trial justice's charge can be attributed to his mistaken reliance on *Apollonio v. Kenyon,* 101 R.I. 578, 225 A.2d 778 (1967). In that case the jury was instructed that if it found that at the time of the making of the will the proponent stood in a relationship of trust and confidence to the testatrix, then the burden of proof was upon the proponent to prove that the will was not produced by undue influence on his part. The crucial distinction between *Apollonio* and the present case was the failure by counsel for the proponents in *Apollonio* to make an objection to the charge. Therefore, in accordance with well-settled principles, the charge became the law of the case. *Roland Bileau Transportation Co. v. Lodie Brien, Inc.,* 100 R.I. 723, 219 A.2d 401 (1966). Throughout the decision this court analyzed the alleged errors in light of the charge that had become the law of that case. Such is not the posture of the present case since the proponents lodged an objection to the trial justice's charge that is now being contested.

A survey of Rhode Island case law reveals no prior precedent that could serve as the basis of the trial justice's instruction. The burden of proving undue influence has traditionally rested with the contestants of the will. *Marcinko v. D'Antuono,* 104 R.I. 172, 243 A.2d 104 (1968); *Talon v. Jackson,* 66 R.I. 302, 19 A.2d 4 (1941); *Heroux v. Heroux,* 58 R.I. 79, 191 A. 265 (1937); *Talbot v. Bridges,* 54 R.I. 337, 173 A. 72 (1934); *Hollingworth v. Kresge,* 48 R.I. 341, 137 A. 908 (1927).

There is a body of case law which may be cited for the proposition that an unexplained, unnatural disposition in a will, when considered with other factors, can give rise to the drawing of an inference of undue influence. *See Lomastro v. Hamilton,* 76 R.I. 114, 68 A.2d 39 (1949); *Talon v. Jackson,* 66 R.I. 302, 19 A.2d 4 (1941); *Huebel v. Baldwin,* 45 R.I. 40, 119 A. 639 (1923).

Nowhere, however, do we find any reference to the shifting of the burden of proof.

In *Giblin v. Dudley Hardware Co.*, 44 R.I. 371, 375, 117 A. 418, 419 (1922), it was pointed out that the term "burden of proof" embraces two different concepts. The first concept, which is often alluded to as the "burden of persuasion," refers to the litigants' burden of establishing the truth of a given proposition in a case by such quantum of evidence as the law may require. The burden of persuasion never shifts. The second concept refers to the "burden of going forward" with the evidence, which shifts from party to party as the case progresses. Similar sentiments were expressed in *Douglas Furniture Corp. v. Ehrlich*, 91 R.I. 7, 160 A.2d 362 (1960).

It must be emphasized that the cases previously mentioned which allow a jury to infer undue influence in certain circumstances do not place the actual burden of persuading the factfinder as to the existence of undue influence on anyone other than the contestants of the will. When there is evidence of suspicious circumstances surrounding the drafting of a will, along with an unnatural disposition of the testator's property, "one instinctively seeks for an explanation." *Huebel v. Baldwin*, 45 R.I. at 45, 119 A. at 641. The jury is thereupon justified in drawing an inference that the will was the product of undue influence. The mechanics of such an inference are best described in *McCormick's Handbook of the Law of Evidence*, § 338 at 789 (2d ed. Cleary 1972). When one puts forth sufficient evidence to raise an inference, and the other party offers no contrary proof, the nonofferor is not entitled to the direction of a verdict in his favor; the court, instead, will permit the issue to be decided by the jury. The adversary who fails to present proof runs the risk that the jury may find against him, even though it is not required to do so. In this situation, in which the proponent chooses not to explain the unusual circumstances or unnatural disposition, he risks an unfavorable verdict based on the permissible inference of undue influence. At no time, however, does the proponent bear the burden of persuasion on this issue. At most, it may be said that he or she who bears the burden of going forward may present evidence that would tend to negate the drawing of the inference of undue influence.

In the case at bar, the burden of proving by a preponderance of the evidence that the will of Lucy Almeida had been procured by the undue influence of her son Rocco remained on the contestants throughout the trial. Since the trial justice's charge was erroneous, a new trial is required.

The proponents' appeal is sustained, the judgment appealed from is vacated, and the case is remanded to the Superior Court for a retrial on the issue of undue influence. Jurisdiction is retained by this court to consider at the appropriate time the other issues pending in this controversy.

MURRAY, J., did not participate.