Richard A. TOUPIN

v.

Robert LAVERDIERE et al.

Nos. 97–537–Appeal.

Supreme Court of Rhode Island.

May 28, 1999.

Richard E. Kyte, Jr., Woonsocket, for plaintiff.

William Y. Chaika, David J. Strachman, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on May 4, 1999, pursuant to an order that directed both parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time.

This case originates in efforts by Mary Ellen Laverdiere (Mary) and her attorney to access $41,000 which she alleges her husband received in contravention of a Family Court restraining order. On November 5, 1993, Mary filed for divorce from her husband, Robert Laverdiere (Robert). During the initial stages of the divorce proceeding in December 1993, a Family Court justice granted a restraining order preventing the transfer of either Mary's or Robert's assets without court approval during the pendency of the divorce. Some dispute exists concerning whether Robert received proper notice of this order. The couple continued to live

together until December 1995 and the divorce proceedings were placed on hold from December 20, 1993 until May 6, 1996.

In the interim, Robert sold Ledge Liquors, a business that he owned, to Vincent and Elaine Christi. Robert personally financed the Christis' purchase, taking a promissory note from the purchasers. In November 1995, the Christis' received Robert's approval to pay off the balance of the note, $41,000. The couple received financing from Security Mortgage Corporation for the amount of the outstanding balance, which was provided to them by Richard Toupin, counsel and escrow agent for Security Mortgage.

Robert deposited the $41,000 check into his checking account on December 7, 1995. Sometime in April 1996, Mary's attorney learned of the sale and contacted Toupin to determine the status of the $41,000 paid to Robert. Toupin mistakenly stated that the check remained uncashed.

Relying on this information, Mary filed a contempt motion based upon the December 1993 restraining order. A hearing on the contempt motion was scheduled for May 31, 1996, but was to be continued until June 13, 1996, by agreement of the parties so that the Laverdieres could attend their daughter's college graduation. However, when Mary's attorney appeared on May 31 to request this continuance, he also submitted an *ex parte* motion to the Family Court justice, "asking the [Family] Court to * * * order Mr. Toupin to stop payment on that check if it hasn't been paid, and restrain any further checks to Mr. Laverdiere until we can be heard on June 13th." The Family Court justice granted this motion, and Mary's attorney drafted an order to the effect that Toupin was to stop payment on the check originally issued to Robert, but added that Toupin was to issue a "new check payable to the Registry of the Family Court" for $41,000. This order was signed by a Family Court clerk (without presentation to the justice) and entered into the record. As a result, Toupin, still under the mistaken assumption that the original $41,000 check had not

been cashed, issued a new check to the Registry of the Family Court, and that check was deposited into the Family Court's registry account on June 13, 1996.

On June 27, 1996, the Laverdieres entered into a settlement agreement, which was preliminarily approved by the Family Court along with their divorce petition. Part of the settlement agreement provided that

"The parties acknowledge that as a result of the sale previously of Ledge Liquors to third parties there is on deposit with the Registry of the Family Court the sum of $41,000. The parties agree that from said sum the Husband shall be responsible to pay legal fees on behalf of the Wife in the sum of $5,000 and the balance of $36,000 shall be paid over to the Wife to be used as she sees fit. The Wife waives any claim to reimbursement of certain bills which she has been paying in order to maintain the marital estate which bills total approximately $6,000.00."

On or about July 1, 1996, Mary withdrew the $41,000 in question from the Registry of the Family Court, disbursing $5,000 to her attorney and retaining the balance for herself.

Sometime thereafter, Toupin discovered that both the original and new check had been cashed, leaving a shortage in his escrow account of $41,000. He consequently brought suit against both Robert and Mary in a six-count complaint, alleging unjust enrichment, conversion, unilateral mistake, and wrongful payment, and praying for return of the $41,000 overpayment. The Laverdieres filed cross-claims against each other, each alleging that the other was fully responsible for any judgment rendered in Toupin's favor.

The case was heard before a Superior Court justice sitting without a jury. At the conclusion of the trial, the trial justice ruled in favor of Toupin, reasoning that

"although Mrs. Laverdiere may have honestly believed at the time of the execution of the property settlement agree-

ment and her withdrawal of the funds from the Registry that they were Mr. Laverdiere's funds or otherwise subject to his control. In fact, they were not. She was not entitled to have that money. It belonged rightfully to the Plaintiff. She is therefore obligated to pay it back. It would be inequitable and unjust to allow her to keep money which was not hers to take at the time."

The trial justice also found that "[b]y authorizing the release of those funds from the Registry in the settlement agreement [Robert] wrongfully appropriated [Toupin's] money knowingly to his own use. He is obligated to compensate the Plaintiff for the loss of that money." Accordingly, the trial justice held both Robert and Mary jointly and severally liable for $41,000 in damages, while also provisionally granting both cross-claims "in contribution or indemnification to the extent that either Defendant pays the Plaintiff more than one-half of Plaintiff's judgment." Mary appealed the trial justice's holding of joint and several liability.

■ This case presents a unique set of facts wherein one party mistakenly overpays a second party because of the machinations of a third party, who in turn comes to possess the proceeds of that overpayment through a transaction with the second party. These circumstances place this case betwixt the rule that "[o]ne who receives money in good conscience and has practiced no deceit or unfairness in obtaining it is under no legal obligation to return it to one from whom it has been obtained by deceit on the part of another," *Smith v. Pendleton*, 53 R.I. 79, 86, 163 A. 738, 740 (1933), and the rule that payments made under mistake of fact may be recovered. *E.g.*, Restatement of the Law, *Restitution* § 19 (1937); *see generally* 66 Am. Jur.2d *Restitution and Implied Contracts* §§ 118–19 (1973) ("Money Paid by Mistake").

■ Mary relies on the former rule, claiming that as part of her divorce settlement agreement, she surrendered valuable consideration in the form of relinquished claims against her husband in return for the $41,000, unaware that this money was not properly her husband's property. Therefore, she concludes that she cannot be compelled to return this money to its original owner. Toupin argues consistent with the latter rule that the replacement check was issued because of a series of errors, and therefore, Toupin should be allowed to recoup his overpayment. Robert joins Toupin in support the trial court's finding of joint and several liability.

The crucial factor in the instant case is that Mary's attorney set into motion the events which resulted in Toupin's overpayment. Laboring under the misbelief that Robert had not yet cashed the first check issued by Toupin, her attorney embarked on a course of action to secure these proceeds for Mary. To do so, the attorney obtained an order through an *ex parte* motion addressed to a Family Court justice when he was ostensibly in court for the sole purpose of requesting a continuance so the parties could attend a family event. The attorney further erred by drafting into this order a requirement that Toupin deposit a replacement check in the Family Court escrow account, a mandate not contained in the Family Court justice's ruling. Without this questionably obtained order, Toupin would not have mistakenly drafted a duplicate check. Therefore, we conclude that Mary did not receive this money "in good conscience" or practice without "deceit or unfairness," *Smith*, 53 R.I. at 86, 163 A. at 740, and accordingly, does not take this money free and clear as a subsequent bona fide purchaser for value. Her attorney's conduct is attributable to her. *See King v. Brown*, 103 R.I. 154, 157, 235 A.2d 874, 875–76 (1967).

■ Mary argues that Toupin's slipshod bookkeeping prevented him from discovering that the first check had been cashed, and therefore, he has only himself to blame for the overpayment. This contention runs afoul of the prevailing view that "[a] person who has conferred a benefit upon another by mistake is not precluded

from maintaining an action for restitution by the fact that the mistake was due to his lack of care." Restatement of the Law, *Restitution* § 59 (1937); *see also Akerson v. Gupta,* 458 F.Supp. 189, 191 (E.D.Mo. 1978); *Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 520 P.2d 1262, 1268–69 (1974); *Firestone Tire & Rubber Co. v. Central National Bank of Cleveland,* 159 Ohio St. 423, 112 N.E.2d 636, 642 (1953); 66 Am.Jur.2d *Restitution and Implied Contracts* § 131 (1973) ("the failure of one paying money to another under mistake of fact to use ordinary care to avoid such mistake will not defeat his right to recover it back in an action for money had and received"). Therefore, Toupin has a cognizable action to seek the return of his money even though the overpayment might have been the product of his own negligence.

None of the foregoing absolves Robert of his wrongful conduct. Robert knew that the second check was incorrectly issued, yet allowed this check to become the basis of his settlement agreement with Mary. Therefore, he was correctly found to be jointly and severally liable to Toupin.

In sum, Toupin was dispossessed of his money by the improper acts of both Laverdieres and the attorney for Mary. Consequently both parties and counsel are responsible for the consequences of their behavior. Therefore, the trial justice was correct to find the Leverdieres jointly and severally liable for the return of the overpayment.

Our holding in this case does not leave Mary without recourse to acquire her just portion of the proceeds from the Ledge Liquors sale. The Family Court has not given final approval to the Laverdiere's divorce settlement agreement, and that agreement may now be modified based upon the changed circumstances growing out of our decision in the instant case.

In conclusion, the judgment of the Superior Court is affirmed, and Mary's appeal is denied and dismissed. The papers in this case are remanded to the Superior Court.