IRENE M. HUEBEL, p. a. *vs.* BURTON J. BALDWIN, EX.

FEBRUARY 15, 1923.

PRESENT: Sweetland, C. J.; Vincent, Stearns, Rathbun, and Sweeney, JJ.

*(1)   Wills.   Motion to Direct Verdict.   Closing Case.*

Where the proponent of a will offered formal proof of. its execution and of testamentary capacity and contestant presented evidence on the issue of undue influence and rested and proponent thereupon moved for direction of a verdict, the effect of the motion was to close proponent's case.

*(2)   Motion to Direct Verdict.*

In considering a motion for direction of a verdict, the trial court cannot pass either on the preponderance in weight of the evidence or in regard to issues on which the evidence is conflicting but the single question for his consideration is, is there sufficient legal evidence. to require submission of the case to the jury and in arriving at a conclusion on this question, all the evidence in favor of the opposite party and all the inferences from the facts which are reasonable and favorable to such party are the proper subjects of consideration by the court.

*(3)   Wills.   Undue Influence.*

Undue influence in many cases can only be proved by circumstantial evidence. Facts and inferences which when considered singly are of slight and of different degrees of evidentiary weight may often when considered in combination properly be held to furnish sufficient proof of undue influence. Each case must be judged from the facts of the particular case.

*(4)   Wills.   Evidence.   Inferences.   Motion to Direct Verdict.*

The failure of a party to an action, who is present in court, to testify in explanation of testimony adverse to him, may properly be considered by the court on motion to direct a verdict as an admission of either inability or unwillingness to meet the issue.

*(5)   Wills.   Undue Influence.   Direction of Verdict.*

On a probate appeal from the probating of a will evidence considered and held, sufficient to have required submission of the case to jury.

PROBATE APPEAL from probate of will.   Heard on exception of appellant and sustained.

STEARNS, J.   This case is in this court on the bill of exceptions of Irene M. Huebel, appellant.   The only exception urged is to the action of a trial justice in the Superior Court in directing a jury to return a verdict sustaining the will of one Mrs. Amanda S. Muenchinger, a widow, seventy

years of age who died in Newport, January 16, 1921. For a number of years Mrs. Muenchinger had conducted a fashionable boarding house and as a result of her industry had acquired real estate and personal property which was used in the conduct of her business and was of the net value of $57,000. After the death of her husband, which occurred in the spring of 1915, she became acquainted, in the summer of that year, with the appellee, Burton J. Baldwin. At that time Mr. Baldwin, who was about forty years of age, was a guest in her boarding house, and was engaged as a private tutor for a youthful resident of Newport. Mrs. Muenchinger and Mr. Baldwin became very friendly and after Mr. Baldwin's departure from Newport, in the fall of 1915, they carried on a correspondence and later Mrs. Muenchinger visited Mr. Baldwin in New York. In the spring of 1916, at the invitation of Mrs. Muenchinger, Mr. Baldwin returned to Newport, took up his residence in the boarding house and became an assistant to Mrs. Muenchinger in the management of her business. Mrs. Muenchinger was a woman of strong will and of very considerable executive ability. She had no children or near relatives. The appellant, Irene Huebel, the only child of Mrs. Meunchinger's sister, was born in 1902; her father died when she was very young; after the death of her mother, in 1912, Mrs. Muenchinger had provided for her support and education. The relations between the aunt and her niece were friendly and affectionate. In February, 1918, on the suggestion and at the request of her aunt, upon the application of the niece, Mrs. Muenchinger was appointed guardian of her niece. At this time appellant testifies that her aunt told her she would leave her well provided for and this statement was made to her at other times, both before and after this time. There is testimony also of like statements made to another witness. In March, 1918, appellant was sent by Mrs. Muenchinger, with the approval of Mr. Baldwin, to a boarding school where she remained for over two years. During this period appellant at different times

visited her aunt, who continued to maintain a close supervision over the education and welfare of her niece. The relations between Mrs. Muenchinger and Mr. Baldwin continued to grow more intimate. They admired each other and enjoyed each other's society. They took vacation trips together to Atlantic City and other resorts. On one visit, but one trunk was used by them for their baggage. At the boarding house they had their meals together in a private dining room. Although Mrs. Muenchinger continued to be the head of the establishment until her death, Mr. Baldwin was recognized as managing director. Without going into further detail, it is apparent from the testimony that the relations between the two were of great intimacy and were very confidential. There is no claim made, nor is there any evidence to support any claim, of any impropriety in their intimacy. The situation, however, was somewhat unusual and the conclusion is certainly not unreasonable that Mr. Baldwin had both the opportunity and the power to influence Mrs. Muenchinger to a certain extent, if he desired to do so. In her presence and in public he took occasion at various times to praise her ability and to compliment her. Appellant claims this was flattery given with an ulterior motive, the intention being thereby insidiously to acquire a controlling influence over her will not by coercion but by indirection.

By the provisions of her will, which was executed March 1, 1919, Mrs. Muenchinger gave all of her property to Mr. Baldwin, as stated therein: "so that he will be able to continue the business which we have carried on together under the name of 'Muenchinger-King' as I hope he will, but without any legal obligations whatever so to do." Then comes a clause, as follows: "I also (so far as I have power so to do) appoint said Burton J. Baldwin as Guardian of my niece, Irene M. Huebel, if she is still under age at my decease and I wish (without imposing any legal obligations so to do) that he may continue during her minority the provision I have heretofore made for the said Irene M.

Huebel." Baldwin was nominated in the will as executor and exempted from giving bond as such.

Mrs. Muenchinger's health failed somewhat in 1919, but, with occasional interruptions due to sickness, she continued to manage her business until a short time before her death. In 1919, Mr. Langley, a contractor in Newport, who in former years had frequently done contracting work in connection with the boarding house for Mrs. Muenchinger, met her on the street. She said to him that he was a great stranger; he replied that he would like to see her often; she said, "I would like to see you but things have changed a great deal from what they were previous and I have nothing to say about what goes on;" and as witness says, "her hand trembled and the tears ran down her cheeks while she was talking to me." The truth of this incident was not questioned by the appellee.

At the trial of the case Baldwin, the appellee and proponent of the will, in accordance with the rules of practice of the Superior Court, in putting in his case first presented the formal evidence of the execution of the will and of testamentary capacity. Appellant then presented evidence on the issue of undue influence and rested her case. The appellee thereupon, without presenting any evidence in rebuttal, made a motion for the direction of a verdict. The sole question is, was this action of the court in the direction of the verdict erroneous? Although the appellee did not state that he had closed his case, that is immaterial. The effect of this motion at this stage of the proceeding was to close appellee's case. The trial court is not bound to rule on the sufficiency of the evidence of either plaintiff or defendant on motion for nonsuit or for the direction of a verdict before the whole evidence for both parties is presented. Motions thus made are addressed to the discretion of the court and the refusal thereof is not a subject of exception. *Oates* v. *Union R. R. Co.*, 27 R. I. 499. Evidence in support of and against the validity of the will had been presented by the parties. The court can not be

required to pass on the question of the sufficiency of evidence in parts. *Cranston Print Works Co.* v. *A. T. & T. Co.*, 43 R. I. 88. In weighing the evidence the trial justice in the consideration of questions of fact in the present inquiry should apply the same rules of reasoning as a jury might properly use, but with this difference — that decision can not be made at this stage of the trial either on the preponderance in weight of the evidence or in regard to issues on which the evidence is conflicting. The single question is, is there sufficient legal evidence to require submission of the case to the jury? In arriving at a conclusion on this question, all the evidence in favor of the appellant and all the inferences from the facts which are reasonable and favorable to appellant, are the proper subjects of consideration by the trial justice.

Undue influence in many cases can only be proved by circumstantial evidence. Facts and inferences which when considered singly are of slight and of different degrees of evidentiary weight may often when considered in combination properly be held to furnish sufficient proof of undue influence. Each case must be judged on the facts of the particular case. In the present case certain arguments may fairly be urged by appellant. In the circumstances the terms of the will naturally challenge an explanation. The gift of the entire estate to Baldwin, a stranger in blood, and the exclusion of the niece, the sole heir and next of kin, from any benefit under the will, is inconsistent with the expressed intention of the testatrix to provide for the niece, who was dependent for her support on testatrix and whose welfare had been heretofore one of the main interests of the testatrix, and this inconsistency is emphasized by the wish expressed in the will to continue to make some provision for the niece. Granting, as is doubtless the fact, that another predominating influence moving the testatrix was the pride she had in the maintenance and continuance of her establishment, it is nevertheless to be noted that Baldwin was not legally bound to continue the business by the terms of the will. The desire of testatrix that after her death her

niece should continue to receive financial assistance during minority is expressed in the will but no legal obligation is imposed on the sole beneficiary to carry out the wish.

Although it may be an overstatement to say that the will is unnatural, as this term is sometimes used, nevertheless the nature of the will is so unusual and is indicative of such a departure from what appears to be the real, complete and present intention of the testatrix, that one instinctively seeks for an explanation which the facts seem to require.

The relations between Mrs. Muenchinger and Mr. Baldwin were very intimate and confidential. He had the opportunity and it may be the inclination to impose his will upon the testatrix. This result may have been accomplished indirectly by subtlety rather than directly and by coercion. The circumstances are suspicious and such as called for some explanation. The only witness capable of making any explanation and giving direct evidence in regard to the issue was Baldwin. He was in the court room and available as a witness. His failure to testify in regard to facts vital to the issue and some of which were known only to him, warrants an inference unfavorable to him and to his claims. The jury properly might infer that the failure to call an available and material witness by the party who naturally is expected to produce such witness was an admission that the testimony of such witness would be (4) unfavorable. So, in the case at bar, the failure of a party to the action, who is present in court, to testify in explanation of testimony adverse to him may properly be considered by either court or jury as an admission of either inability or unwillingness to meet the issue. *Lynch* v. *Peabody et al.*, 137 Mass. 92. There was sufficient evidence to require submission of the case to the jury.

The exception of appellant to the direction of a verdict is sustained and the case is remanded to the Superior Court for a new trial.

*William H. McSoley, Frank F. Nolan,* for appellant.

*Claude R. Branch, Edwards & Angell, Sheffield & Harvey,* for appellee.