Linda J. FRANCO et al.

v.

Joseph A. LATINA, M.D.

No. 2002–233–Appeal.

Supreme Court of Rhode Island.

Jan. 9, 2004.

Mark Decof, Providence, for Plaintiff.

Michael G. Sarli, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## OPINION

FLANDERS, Justice.

This is a medical malpractice case in which the trial justice granted a new trial to the plaintiff, surgical patient Linda J. Franco, after a jury returned a verdict for the defendant surgeon, Joseph A. Latina, M.D. (Dr. Latina). Pursuant to G.L.1956 § 9–24–7 (allowing appeals from orders granting or denying a new trial after a trial by jury), Dr. Latina appealed from the order granting plaintiff's motion for a new trial. In doing so, he asks us to vacate the new-trial order and to direct the Superior Court to enter judgment in his favor. But after reviewing the record, ascertaining that the trial justice adhered to the appropriate standard in granting a new trial, and according that decision appropriate deference, we are convinced that the order should stand.

### Facts and Travel

In 1996, when he was surgically removing plaintiff's gallbladder, Dr. Latina mistakenly clipped and cut her common bile duct. As a result, plaintiff had to undergo reconstructive surgery. Doctor Latina admitted that he misidentified his patient's bile duct and, consequently, he mistakenly clipped and cut it, believing it was a cystic duct that was part of the gallbladder he was removing. But he suggested that he was not guilty of malpractice because the so-called infundibular technique he used to perform the operation was the real culprit—even though it was an accepted surgical method that was consistent with the standard of care when he operated on plaintiff in 1996.

In response to special interrogatories, the jury returned a verdict in favor of Dr. Latina on both the negligence and the lack-of-informed-consent claims in the complaint. The plaintiff then filed a motion for a new trial, which the trial justice granted, issuing a ten-page written decision. On appeal, defendant argues that the trial justice overlooked or misconceived the fact that, in this case, the surgical technique itself—rather than the manner in which he performed the operation—was to blame for the injuries that the patient suffered.

### Analysis

■ A trial justice's duty in passing upon a new trial motion is to function as a "superjuror." *English v. Green,* 787 A.2d 1146, 1149 (R.I.2001) (citing *Long v. Atlantic PBS, Inc.,* 681 A.2d 249, 254 (R.I. 1996)). In carrying out this function, the trial justice should review the evidence and exercise his or her independent judgment "in passing upon the weight of the evidence and the credibility of the witnesses." *Martinelli v. Hopkins,* 787 A.2d 1158, 1165 (R.I.2001) (citing *Dilone v. Anchor Glass Container Corp.,* 755 A.2d 818, 821 (R.I. 2000)). "If the trial justice determines that the evidence is evenly balanced or is such that reasonable minds, in considering that same evidence, could come to different conclusions, then the trial justice should allow the verdict to stand." *Id.,* (quoting *Graff v. Motta,* 748 A.2d 249, 255

(R.I.2000)). If, however, the trial justice determines that the verdict is against the preponderance of the evidence and fails to do justice to the parties or to respond to the merits of the controversy, then he or she should grant the motion. *Perkins v. City of Providence*, 782 A.2d 655, 656 (R.I. 2001) (per curiam) (citing *Kurczy v. St. Joseph Veterans Association, Inc.*, 713 A.2d 766, 770 (R.I.1998)). On appeal, when the decision of the trial justice reveals that he or she has performed this function according to the applicable standard, our review is deferential: we will not disturb a trial justice's decision either granting or denying a new-trial motion unless the trial justice overlooked or misconceived the evidence or otherwise was clearly wrong. *English*, 787 A.2d at 1149 (citing *Kurczy*, 713 A.2d at 770).

In this case, the trial justice did exactly what trial justices are supposed to do when ruling on a motion for a new trial. She conducted an extensive review of the evidence, including the testimony of the expert witnesses, the medical literature, and the testimony of Dr. Latina. She said that it was Dr. Latina's own testimony that best supported plaintiff's theory that Dr. Latina failed to meet the applicable standard of care when he mistakenly clipped and cut her common bile duct during this surgery to remove her gallbladder. The trial justice noted that Dr. Latina acknowledged the standard of care required him to properly identify the anatomical structures to be cut before he performed the surgical procedures in question. But Dr. Latina's own testimony, the trial justice concluded, demonstrated that "he was anatomically lost."

Most importantly, the trial justice rejected Dr. Latina's theory of the case: that his use of a flawed surgical technique—one that was acceptable in 1996 when he operated but was later revealed to be too dangerous—was the true cause of plaintiff's injuries. The trial justice found that even Dr. Latina acknowledged he was required to conclusively identify the anatomical structures before removing the patient's gallbladder. Regardless of which surgical method the doctor used, the trial justice found, the applicable standard of care required the surgeon to correctly identify the anatomical structures involved in the surgery before proceeding to clip and cut any of the structures in question. She noted that the doctor's admitted misidentification of the common bile duct as one of the structures to be cut indicated that he had failed to meet this standard.

The trial justice further found that "the verdict in favor of the defendant [was] not based on ample credible testimony and evidence" and that "[r]easonable minds could not have come to the conclusion reached by the jury." With respect to Dr. Latina's suggestion that the later-criticized surgical procedure he used was to blame for his misidentification of his patient's cystic duct, the trial justice rejected this theory as "disingenuous," and as having "misled the jury." Based on the testimony of the two expert witnesses who testified for plaintiff, the trial justice was convinced that even though Dr. Latina was using a surgical procedure that was within the standard of care when he performed the surgery, it was his negligent performance of this procedure—and not the technique itself—that was to blame for the doctor's misidentification of the structures in question.

Doctor Latina argues that the trial justice overlooked or misconceived evidence supporting his theory. First, he points to the cross-examination of Dr. Brock about an article that a Dr. Steven M. Strasberg wrote in 2000, four years after plaintiff's surgery. This article suggested that the procedure Dr. Latina used to remove this

plaintiff's gallbladder—namely, the infundibular technique for duct identification when performing a laparoscopic cholecystectomy—was unsafe and should be abandoned by surgeons. Steven M. Strasberg, Christopher J. Eagon & Jeffrey A. Drebin, *The "Hidden Cystic Duct" Syndrome and the Infundibular Technique of Laparoscopic Cholecystectomy—The Danger of the False Infundibulum*, 191 J. of Am. C. Surgeons 661, 667 (2000). The article further stated that "well-trained, skilled, and experienced surgeons are involved in [causing common bile-duct] injuries."

Doctor Latina also contends that the trial justice overlooked evidence that the infundibular technique, which he used in performing this surgery, was within the standard of care in 1996. He cites *Sheeley v. Memorial Hospital*, 710 A.2d 161 (R.I. 1998) to support this argument. In that case, we held that "the focus in any medical malpractice case should be the procedure performed and the question of whether it was executed in conformity with the recognized standard of care." *Id.* The *Sheeley* case, however, does not discuss the use of specific techniques in medical treatment, but speaks in terms of the procedure performed and the manner in which it is performed. *See id.* The surgical procedure used in this case was a laparoscopic cholecystectomy. One of plaintiff's experts explained that the issue was not the technique that the surgeon used in identifying anatomical structures, but "[t]he issue is you've got to identify [the anatomical structures] one hundred percent." He explained: "[T]here are maneuvers that every surgeon like[s] to say I do it this way. It helps me see things better, but the ultimate aim is exactly the same. As I say, there is more than one way of skinning a cat. As long as you skin the cat, it doesn't matter where you start." Both experts who testified for plaintiff concluded that, in misidentifying the cystic duct and in cutting the patient's common bile duct, Dr. Latina violated the standard of care, regardless of which surgical technique he used.

Doctor Latina next suggests that the trial justice held him strictly liable for the plaintiff's injuries. He points to the well-settled rule that "the mere occurrence of an accident, without more, does not warrant an inference that a defendant was negligent or that its negligence was the proximate cause of the plaintiff's injury." *Carnevale v. Smith*, 122 R.I. 218, 224, 404 A.2d 836, 840 (1979). The expert testimony in this case indicated, however, that the standard of care required Dr. Latina to conclusively identify the patient's gallbladder and cystic duct before beginning to cut any of the structures involved in the surgery. On cross-examination, defense counsel asked Dr. A.R. Moossa, one of plaintiff's experts, whether he agreed that this type of bile-duct injury can occur even if a surgeon adheres to the correct standard of care. The doctor replied that he disagreed. Another expert for plaintiff, Dr. James Brock, on redirect examination by plaintiff's counsel, was asked whether plaintiff's injury would have occurred if the doctor had "conclusively established that he was at the cystic duct." Doctor Brock replied that this injury "[n]ever" would have occurred. Therefore, even though some expert testimony from one of plaintiff's expert witnesses, when taken out of context, supported Dr. Latina's theory of defense, this was not a case in which the trial justice's new-trial decision was based solely upon an inference resulting from the occurrence of plaintiff's injury. Instead, it enjoyed solid grounding in the testimony of two expert witnesses, both of whom indicated that this type of injury would not have occurred if Dr. Latina had performed the surgery according to the applicable

standard of care when he removed his patient's gallbladder.

Doctor Latina also insists that the trial justice overlooked or misconceived the testimony of Dr. Brock, on cross-examination, when Dr. Brock indicated that an injury to the common bile duct could occur even if the surgeon performed the surgery within the standard of care. But he later clarified this could occur only "under certain unusual conditions * * * such that the common [bile] duct has been drawn right next to the cystic duct and is inseparable by chronic scarring, fibrosis, or tumor, to create what could be the image of a bile duct flaring out to the gallbladder." None of these unusual conditions, he said, existed in this case. Taken out of context, however, some of the questions and answers from this witness do support Dr. Latina's assertion that he could have been acting within the standard of care when he caused plaintiff's injury. Other evidence presented, however—including the direct and redirect testimony of Dr. Brock, the expert testimony of Dr. Moossa, and the medical literature submitted as evidence—supported plaintiff's contention that the standard of care required the surgeon to conclusively identify the cystic duct before cutting and removing the gallbladder, and that Dr. Latina negligently failed to do so when he performed this operation, regardless of which technique he used. The trial justice did not err in assigning dispositive weight and credibility to this latter evidence when she decided to grant plaintiff a new trial.

█ Doctor Latina next posits that the trial justice overlooked or misconceived his own testimony that he properly performed the surgery and conclusively identified plaintiff's cystic duct. The trial justice did not specifically refer to this testimony in her decision on the new-trial motion, but she discussed Dr. Latina's theory of the case, mentioning that it "was disingenuous and misled the jury." She referred to that portion of his testimony in which Dr. Latina admitted that he misidentified the cystic duct and agreed that the standard of care at the time of the surgery required him to conclusively and unmistakably identify the cystic duct before cutting the structures to be removed. A trial justice, in ruling on a new trial motion, need not exhaustively review all the evidence and testimony presented at trial but need refer only to those facts and portions of the evidence that motivated his or her conclusion. *Bourdon's, Inc. v. Ecin Industries, Inc.,* 704 A.2d 747, 758 (R.I.1997) (citing *Kwarciak v. Star Market,* 506 A.2d 545, 547 (R.I.1986)). His or her recitation of the evidence should be sufficient to allow us to determine, on appeal, whether the trial justice has applied the appropriate standards. See *State v. Otero,* 788 A.2d 469, 472 (R.I.2002). Here, the trial justice's ten-page written decision on plaintiff's new trial motion amply met this standard.

Doctor Latina further urges that the trial justice overlooked evidence indicating that the surgical procedure he employed limited his ability to conclusively identify the cystic duct. As indicated above, however, the trial justice was well aware of defendant's theory of the case, but chose not to accept the notion that the flawed surgical technique, alone, absolved Dr. Latina from all negligence in its execution. Doctor Moossa testified that the discussion of the various surgical techniques was confusing the issue and that the important goal in this type of surgery, regardless of the technique employed, was to "identify everything one hundred percent." Doctor Brock stated that conclusive identification was possible, regardless of which technique the surgeon used when this operation occurred in 1996.

Finally, Dr. Latina asserts that the plaintiff failed to meet her burden of proof in this case and that a new trial was not warranted. As discussed above, however, it does not appear to us that the trial justice overlooked or misconceived the evidence presented; rather, we are of the opinion that she carried out her duty under the applicable law to review the evidence and to exercise her independent judgment. In light of the deference this Court affords to a trial justice's ruling on a new-trial motion, we are not persuaded that her decision should be overturned.

### Conclusion

For these reasons, we affirm the granting of a new trial and remand this case to the Superior Court for that purpose.