May 30, 2017

**Supreme Court**

Mark Quillen              :              No. 2016-76-Appeal.
                                       (PC 13-5808)

v.                    :

Mary Macera.          :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

| Mark Quillen | : | No. 2016-76-Appeal. |
|---|---|---|
| | | (PC 13-5808) |
| v. | : | |
| Mary Macera. | : | |

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  Mark Quillen (plaintiff) appeals from a Superior Court judgment in favor of Mary Macera (defendant), the beneficiary of an Amica Insurance Company (Amica) annuity policy created by Domenic Zubiago (Mr. Zubiago), the plaintiff's great-uncle and the defendant's brother.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

Among other assets accumulated during his twenty-five-year career with the Providence Police Department and subsequent twenty-five years as a security officer for Blue Cross/Blue Shield of Rhode Island, Mr. Zubiago owned two Amica annuity policies.  At the time of his death, one account was valued at approximately $360,000 and the other at $20,000; only the larger account is the subject of this appeal.  The two annuities were opened approximately a

decade apart and each named Mr. Zubiago's sister, Emelia, as the primary beneficiary. After Emelia's death in 2002, Mr. Zubiago executed two change-of-beneficiary forms naming defendant, his younger sister, as the beneficiary of both policies.

The plaintiff is Mr. Zubiago's grandnephew. He testified at the nonjury trial that, in May 2004, he received a telephone call from Mr. Zubiago requesting plaintiff's personal information because Mr. Zubiago "was going to put [plaintiff's] name on an account * * *." Approximately five or six months later, according to plaintiff, he learned that he had been named beneficiary of the two annuities.

Donald Zubiago, Mr. Zubiago's nephew, also testified.[1] He stated that, in early 2008, his uncle called him and said, "I screwed up. I left [plaintiff] too much money." Donald recommended that his uncle see a lawyer. He also testified that Mr. Zubiago later told him that he had taken care of it.

Two Amica employees testified about Mr. Zubiago's request for beneficiary-change forms in September 2009. Maria Shurick said that she received a telephone call from defendant, whom she mistakenly identified on a call sheet as "Mary Zubiago," requesting beneficiary forms for both policies. The request was for forms in which the name of the intended beneficiary is left blank, as opposed to forms in which the name of the new beneficiary is preprinted by Amica. Sarah Driscoll testified that several days later she received a telephone call from Mr. Zubiago in which he authorized her to speak with his sister, Mary, because he had a speech impediment.

The defendant testified that she did not remember any telephone conversations with Amica representatives in which she requested beneficiary-change forms for her brother's annuity policies. She did state that she would sometimes initiate telephone calls for Mr. Zubiago because

---

[1] We shall refer to Donald Zubiago by his first name to avoid confusion; no disrespect is intended.

of his speech impediment, but that she would give the telephone to him and then leave the room, never listening to his conversations. The defendant further testified that, after he received the appropriate forms, Mr. Zubiago asked her to fill in her name, address, and social security number on them. She was adamant, however, that she did not read the forms other than, perhaps, the top line, which said "Amica." Both forms were subsequently signed by Mr. Zubiago, witnessed, and recorded with Amica.

On April 29, 2013, Mr. Zubiago died testate, leaving defendant as the sole beneficiary of the two Amica annuity policies. Shortly thereafter, plaintiff contacted Amica to notify it of Mr. Zubiago's passing and was informed that he was not listed as a beneficiary of the annuities. On the day after Mr. Zubiago's funeral, plaintiff confronted defendant; and, on November 14, 2013, he filed a complaint against her alleging forgery, fraud, manipulation, false pretenses, and misrepresentation. The plaintiff also alleged a lack of intent on the part of Mr. Zubiago.

A trial was held before a Superior Court justice sitting without a jury in January 2015. On the third day of trial, plaintiff filed, without objection by defendant, an amended complaint alleging that the beneficiary-change forms were executed by Mr. Zubiago through mistake or inadvertence. The trial justice filed a written decision on February 2, 2015; and, on February 4, 2015, final judgment entered in favor of defendant. Subsequently, the trial justice heard and denied plaintiff's motion for a new trial, and plaintiff timely appealed.

## II

### Standard of Review

"[I]t is well settled that [t]his Court will not disturb the findings of a trial justice sitting without a jury unless such findings are clearly erroneous or unless the trial justice misconceived or overlooked material evidence * * *." Gregoire v. Baird Properties, LLC., 138 A.3d 182, 191

(R.I. 2016) (quoting <u>South County Post & Beam, Inc. v. McMahon</u>, 116 A.3d 204, 210 (R.I. 2015)). "On review, [w]e accord great weight to a trial justice's determinations of credibility, which, inherently, are the functions of the trial court and not the functions of the appellate court." <u>Id.</u> (quoting <u>South County Post & Beam, Inc.</u>, 116 A.3d at 210). "When 'the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached.'" <u>Id.</u> (quoting <u>South County Post & Beam, Inc.</u>, 116 A.3d at 210). "We will, however, review questions of law <u>de novo</u>." <u>Id.</u> at 192 (quoting <u>South County Post & Beam, Inc.</u>, 116 A.3d at 210).

"[W]e accord great weight to a trial justice's decision on a motion for a new trial." <u>Rhode Island Managed Eye Care, Inc. v. Blue Cross & Blue Shield of Rhode Island</u>, 996 A.2d 684, 695 (R.I. 2010) (quoting <u>Oliveira v. Jacobson</u>, 846 A.2d 822, 826 (R.I. 2004)). "A trial justice acts as a 'superjuror' when ruling on such a motion." <u>Id.</u> (quoting <u>Franco v. Latina</u>, 840 A.2d 1110, 1111 (R.I. 2004)). "In this role, 'the trial justice should review the evidence and exercise his or her independent judgment in passing upon the weight of the evidence and the credibility of the witnesses.'" <u>Id.</u> (quoting <u>Franco</u>, 840 A.2d at 1111). "We will not overturn a trial justice's decision in this regard 'unless the trial justice overlooked or misconceived the evidence or otherwise was clearly wrong.'" <u>Id.</u> (quoting <u>Franco</u>, 840 A.2d at 1112).

# III

## Discussion

### A

### Application of Law

The plaintiff first argues that the trial justice misconstrued his theory of the case and thereby erred by applying the wrong law to the evidence. The plaintiff contends that the trial justice erroneously focused on the issue of undue influence and failed to consider that Mr. Zubiago made a mistake due to a lack of testamentary intent. The plaintiff, as did the trial justice, cites to Illinois State Trust Co. v. Conaty, 104 F. Supp. 729, 733 (D. R.I. 1952), for the proposition that the validity of a testamentary gift "is not affected by a mistake unless fraud or undue influence was perpetrated upon the testator or the mistake involves a want of testamentary intent." The plaintiff asserts that he presented no evidence pertaining to undue influence, but that he "proffered material evidence proving [Mr. Zubiago] lacked the testamentary intent to eliminate [p]laintiff from receiving at least a portion of the [a]nnuity." On appeal, he suggests that Mr. Zubiago "may have thought he was adding [defendant] as a second name on the [a]nnuity, not eliminating [p]laintiff as beneficiary."

We first note that changing a beneficiary designation in an annuity policy is a matter of contract and does not ordinarily implicate issues relating to the construction of wills. Secondly, we observe that plaintiff's original complaint alleged fraud "by trick or device by * * * defendant," manipulation, forgery, misrepresentation, and false pretenses. Although he did allege "mistake and or inadvertence" in an amended complaint, filed on the third day of trial, he never abandoned his original claims; rather, he incorporated them by reference.

More significantly, we are satisfied that the trial justice considered, yet rejected, the possibility that Mr. Zubiago had changed the beneficiary of his annuities by mistake or inadvertence. The trial justice concluded that "[t]here was simply no evidence put forth at trial that would explain [Mr. Zubiago's] change of heart. What is clear, however, is that Mr. Zubiago was very deliberate in planning his estate and in changing the beneficiary designations on the two annuity contracts at issue." The trial justice referenced the evidence that Mr. Zubiago had sought out by himself the two individuals who would witness the change-of-beneficiary forms, that he personally spoke to Amica before executing the forms, that he did not involve defendant in his estate planning, and that he told his nephew, Donald, that he had "screwed up" by giving plaintiff too much money. We afford deference to the factual findings of a trial justice sitting without a jury. Pelletier v. Laureanno, 46 A.3d 28, 35 (R.I. 2012). Here, we perceive no cause to disturb the trial justice's finding that "the evidence overwhelmingly demonstrates that Mr. Zubiago was an independent, hard-working, and kind-hearted man, who acted with great deliberation in planning his estate." We conclude therefore that plaintiff's claim fails from a lack of proof, rather than from the trial justice's misapplication of the law to the evidence.

## B

### Consideration of Material Evidence

The plaintiff next argues that the trial justice erred in overlooking and misconceiving material evidence pertaining to one of the beneficiary-change forms. The plaintiff asserts that the trial justice erroneously referred, in his decision, to the beneficiary-change form as a "preprinted" annuity form on which the name of the beneficiary had been printed by Amica, when in fact the name of the intended beneficiary was blank on the forms sent by Amica. The plaintiff contends that this fact is crucial as it contributes to the totality of the circumstances that prove that Mr. Zubiago lacked the testamentary intent to disinherit plaintiff. The plaintiff

- 6 -

explains that, had the form been preprinted with defendant's name and information, it would be clear that Mr. Zubiago intended the annuity to go to defendant alone. However, because the form was blank, plaintiff asserts, it tends to indicate mistake on the part of Mr. Zubiago to disinherit plaintiff.

At a hearing on plaintiff's motion to clarify, the trial justice conceded that he had mischaracterized the forms as preprinted but stated that it did "not materially or otherwise change [the] court's view of the facts[.]" Thereafter, at the hearing on plaintiff's motion for a new trial, the trial justice further explained that the question of whether the forms were preprinted or blank was not dispositive. He noted that Mr. Zubiago lived for another three years after he removed plaintiff as the beneficiary, yet he made no attempt to restore his grandnephew as a beneficiary of the annuities or otherwise provide for him in any way. Moreover, the trial justice indicated that Mr. Zubiago "continued to confide and trust his sister with his finances." Here, the trial justice acknowledged his mistake and emphatically declared that it did not alter his ultimate conclusion. We discern no reason to vacate the judgment.

## C

### Judicial Notice

Also, plaintiff argues that the trial justice erred in failing to take judicial notice of the findings made by another Superior Court justice after a hearing on plaintiff's request for a preliminary injunction.[2]

Significantly, plaintiff contends that the following statement by the hearing justice remains the law of the case:

---

[2] We shall refer to the justice who presided over the preliminary injunction hearing as the hearing justice.

> "clearly a <u>prima</u> <u>facie</u> case has been established, that at least there has been a mistake or there is an issue as to what prompted a change of beneficiary forms where both parties to this action have testified that it was the intention of Mr. Zubiago to leave monies to * * * [plaintiff]."

Further, plaintiff argues that, because defendant "failed to produce evidence to rebut the <u>prima</u> <u>facie</u> evidence that indeed there was a mistake," the "<u>prima</u> <u>facie</u> evidence should have prevailed."

"The law of the case doctrine [provides] that, 'after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling.'" <u>Chavers v. Fleet Bank (RI), N.A.</u>, 844 A.2d 666, 677 (R.I. 2004) (quoting <u>Paolella v. Radiologic Leasing Associates</u>, 769 A.2d 596, 599 (R.I. 2001)). The purpose of the doctrine is to ensure "the stability of decisions and avoid[] unseemly contests between judges that could result in a loss of public confidence in the judiciary." <u>Commercial Union Insurance Co. v. Pelchat</u>, 727 A.2d 676, 683 (R.I. 1999). We have noted, however, that it "is a flexible rule that may be disregarded when a subsequent ruling can be based on an expanded record." <u>Berman v. Sitrin</u>, 101 A.3d 1251, 1262 (R.I. 2014) (quoting <u>Lynch v. Spirit Rent-A-Car, Inc.</u>, 965 A.2d 417, 424 (R.I. 2009)).

In this case, we agree with the trial justice that it would have been inappropriate for him to apply the law-of-the-case doctrine to the factual findings made by the hearing justice at the hearing for a preliminary injunction. Not only did the trial justice have an expanded record before him, but the issues involved in the two proceedings were markedly different such that it cannot be said that the trial justice was presented with the same question in an identical manner. The trial justice was addressing the ultimate merits of plaintiff's claims, whereas the hearing

justice was tasked with determining whether to issue a preliminary injunction preventing defendant from distributing funds in the annuity accounts. Significantly, the hearing justice did not purport to decide the merits, stating rather, "[w]hat transpired is an issue that needs to be left to discovery and a decision on the merits."

To the extent that plaintiff predicates his argument on the Rules of Evidence concerning judicial notice, he fares no better. Rule 201(b) of the Rhode Island Rules of Evidence states: "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Although this Court has recognized that a court may take judicial notice of court records, "we have said that judicial notice should 'only apply to those aspects of a court record that cannot be reasonably disputed.'" Curreri v. Saint, 126 A.3d 482, 486 (R.I. 2015) (quoting In re Michael A., 552 A.2d 368, 370 (R.I. 1989)). "These would include judgments previously entered by the court that have the effect of res adjudicata * * * pleadings or answers to interrogatories by a party, which pleading or answer might constitute an admission (whether or not superseded by a later pleading or answer) * * *." Id. (quoting In re Michael A., 552 A.2d at 370).

For the reasons stated above in our discussion of the law-of-the-case doctrine, we are of the opinion that the trial justice did not err in refusing to take judicial notice of the factual findings made by the hearing justice at the hearing on the preliminary injunction. As noted, the hearing justice did not make an express determination as to who would prevail, because that was not the issue before the court. Moreover, the trial justice made his findings after more discovery had been conducted and a more complete record was before the court.

# D

## Burden of Proof

Additionally, plaintiff asserts in his supplemental statement that the burden of proof should have shifted to defendant to prove absence of mistake because defendant and Mr. Zubiago had a "confidential relationship."[3] Although Mr. Zubiago clearly trusted and confided in defendant, there is no evidence that he relied on her advice in his financial affairs. Indeed, defendant testified that he was "very quiet about his things," never discussed his estate planning with her, nor had he told her what accounts he had.

Also, the cases cited by plaintiff do not support his assertion. For instance, in Huebel, this Court determined that the grantee's failure to testify warranted an unfavorable inference where the gift of the entire estate went to a nonrelative at the exclusion of any benefit under the will to the testatrix's niece, who was also the testatrix's sole heir and next of kin, and "who was dependent for her support on [the] testatrix." Huebel v. Baldwin, 45 R.I. 40, 44, 119 A. 639, 641 (1923). This Court explained that the exclusion of the testatrix's niece was also "inconsistent with the expressed intention of the testatrix" and determined that "the nature of the will [wa]s so unusual and * * * indicative of such a departure from what appear[ed] to be the real, complete, and present intention of the testatrix, that one instinctively seeks for an explanation * * *." Id. at 45, 119 A. at 641. Here, however, there is no evidence of any unusual circumstance tending to indicate that defendant should bear the burden of proving why decedent named her as

---

[3] To support his assertion, plaintiff cites: Passarelli v. Passarelli, 94 R.I. 157, 161-62, 179 A.2d 330, 332-33 (1962) (relationship between illiterate, aged mother and son was not fiduciary in character); McDonough v. McDonough, 88 R.I. 243, 248-49, 146 A.2d 234, 238 (1958) (parent and child relationship, alone, is insufficient to relieve complainant from burden of proving fraud, duress, or overreaching); Earle v. Chace, 12 R.I. 374, 379 (1879) (grantee has burden when holding confidential relationship to grantor); and Huebel v. Baldwin, 45 R.I. 40, 119 A. 639 (1923).

beneficiary. Therefore, we find no error on the part of the Superior Court in refusing to shift the burden of proof.

## E

## Credibility Determination

Finally, the plaintiff asserts in his supplemental statement that the trial justice erred in finding that the defendant was "[f]orthright and [c]redible." The plaintiff's citation of a quote by John Adams[4] and a list of facts and testimony by the defendant, which the plaintiff contends are conflicting, do not sway this Court to ignore the clear credibility determination of the Superior Court and replace it with our own. Our review of the record does not persuade us that the trial justice was clearly wrong or that he misconceived or overlooked material evidence. See Gregoire, 138 A.3d at 191. Accordingly, we cannot say that the trial justice erred in finding that the defendant was "[f]orthright and [c]redible."

## IV

## Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court and remand the papers thereto.

---

[4] The quotation cited by plaintiff is: "Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." John Barlett, Familiar Quotations 337 (16th ed. Kaplan 1992). The quotation is attributed to John Adams during his successful defense of British soldiers who fired upon a crowd at the Boston Massacre.

# STATE OF RHODE ISLAND AND PROVIDENCE PLANTATIONS

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Mark Quillen v. Mary Macera. |
| **Case Number** | No. 2016-76-Appeal.<br>(PC 13-5808) |
| **Date Opinion Filed** | May 30, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Daniel A. Procaccini |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Gregory J. Acciardo, Esq.<br><br>For Defendant:<br><br>Paul A. Anderson, Esq. |